860 So.2d 78 (2003)
STATE of Louisiana
v.
Creighton L. WUNEBURGER.
No. 03-KA-490.
Court of Appeal of Louisiana, Fifth Circuit.
October 15, 2003.
*80 Jennifer L. Pate, Louisiana Appellate Project, Baton Rouge, LA, for Appellant, Creighton L. Wuneburger.
Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Court, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On October 18, 2001, the Jefferson Parish District Attorney's Office filed a bill of information charging Creighton L. Wuneburger and Jodie L. Barrios with one count of armed robbery in violation of La. R.S. 14:64.[1] On October 19, 2001, defendant was arraigned on the charges and entered a plea of not guilty. On January 29, 2002, defendant proceeded to trial by jury. After a one-day trial, the twelve-person jury unanimously found defendant guilty as charged.
On February 19, 2002, defendant's motion for new trial was heard and denied. After defendant waived the statutory sentencing delays, the trial judge sentenced him on his armed robbery conviction to 50 years at hard labor without benefit of parole, probation or suspension of sentence. That same day, the State filed a habitual offender bill of information alleging defendant was a third felony offender. Defendant *81 denied the allegations of the habitual offender bill.
On March 18, 2002, after a hearing, the trial judge found that the State had proven that defendant was a third felony offender with three violent felony offenses. After defendant waived sentencing delays, the trial judge vacated defendant's underlying armed robbery sentence and sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. On appeal, defendant seeks review of his adjudication as a third-felony offender and his life sentence, which he alleges is excessive.[2]

Facts
In the early morning hours of May 17, 2001, Alicia Jones and her infant daughter were visiting her then-husband, Richard King, at his place of employment, the E-Z Serve Convenience Store at 3751 Barataria Boulevard in Marrero. At about 4:00 a.m. that morning, a woman walked into the store to pay for gas and purchase cigarettes. Subsequently, a man entered the store, talked briefly to the woman, and exited. Moments later, the same man re-entered the store, grabbed Jones by the hair and put a sharp object to her throat. The man demanded money from the cash register. After King opened the cash register, the man took the money then he and the woman left in a white van. Jones phoned the police, who arrived shortly thereafter.
Detective Kevin Decker of the Robbery Division of the Jefferson Parish Sheriff's Office ("JPSO") investigated the robbery. Detective Decker, after reading the initial report, learned that a deputy, who had responded to the robbery, reviewed the video surveillance tape and recognized the female suspect as Jodie Barrios. Detective Decker prepared a six-picture photographic lineup that contained a photograph of Barrios. When Detective Decker showed the lineup separately to Jones and King, they both positively identified Barrios as being the woman in the store during the robbery.
Detective Decker obtained an arrest warrant for Barrios. When he arrived at Barrios' home to execute the warrant, he observed a full-sized white Ford van parked outside of her house. Detective Decker learned that Mark Hilton, who was present at Barrios' residence, owned the van. Further, Hilton gave Detective Decker and JPSO Sergeant Scott Fontaine permission to search the van. In the van, the officers found two utility knives, which are also commonly known as "box-cutters," similar in description to the weapon used during the robbery.
When interviewed, Hilton stated that he was asleep at Barrios' home on the morning of May 17, 2001 when he awoke and realized that his keys and phone were missing from his pocket. When he walked outside, he saw his van being backed into Barrios' yard. When he yelled at the people in his van, the male driver stopped the van and quickly exited through the passenger door. Hilton then saw Barrios in the passenger seat of the van. After exchanging words with Barrios, Hilton retrieved his keys and phone from Barrios and left her house.
Detective Decker then interviewed Barrios and her houseguest, Pandora Brennan, who both implicated defendant, Creighton Wuneburger, in the armed robbery. Brennan told Detective Decker *82 that, at approximately 4:00 a.m. on May 17, 2001, she was in her room at Barrios' home when defendant and Barrios left to go to the store. A short time later, the two returned with handfuls of money. When Brennan asked where they had gotten the money, defendant responded they had just robbed a local convenience store.
After receiving that information, Detective Decker compiled a photographic lineup, which included a photograph of defendant. When King and Jones separately viewed the photographic lineup, they both positively identified defendant as the perpetrator. Based on all of the information gathered in his investigation, Detective Decker swore out an arrest warrant for Creighton Wuneburger on May 21, 2001.
About five months later, on October 9, 2001, Detective Decker was advised that defendant had been arrested pursuant to his warrant and was incarcerated on the charge. The detective, after advising defendant of his constitutional rights and obtaining a waiver of those rights, interviewed the defendant.
In his statement to Detective Decker, which was played to the jury at trial, defendant admitted that he and Barrios went to the E-Z Serve in a white van belonging to Hilton. He walked into the store and grabbed a woman in the store, and, with a box cutter to her throat, demanded money from the man behind the counter. After taking the money, defendant and Barrios returned to Barrios' home. After hearing the evidence, including testimony from witnesses, the jury unanimously found the defendant guilty as charged of armed robbery.
In his first assignment of error, defendant argues that the trial court erred adjudicating him a third felony offender. He contends that the trial court erred in finding him to be a third felony offender because, at the time of one of his prior guilty pleas, the trial court failed to correctly inform him of the nature of the charge to which he was pleading guilty.
In the instant case, the State filed a habitual offender bill of information alleging defendant to be a third felony offender. Although defendant did not file a written response challenging the validity of his prior guilty plea as required by La. R.S. 15:529.1(D)(1)(b), he did orally object at the habitual offender hearing to the failure of the trial judge to correctly inform defendant of the nature of the charge in one of his prior convictions. Therefore, because defendant objected at the habitual offender hearing, he has preserved the issue for review. State v. Sanders, 00-1369 (La.App. 5 Cir.2/28/01), 784 So.2d 19, 21.
In State v. Hollins, 99-278 (La. App. 5 Cir.8/31/99), 742 So.2d 671, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587, this Court, citing, State v. Shelton, 621 So.2d 769 (La.1993), summarized the burden of proof in habitual offender proceedings as follows:
Where a prior conviction resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to the guilty plea, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 [(1969)].... If defendant denies the allegations of the bill of information, the State has the burden of proving the existence of the prior guilty pleas and that defendant was represented by counsel. Once the State meets this burden, defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. Thereafter, the State must prove the constitutionality of the plea.

*83 In proving the constitutionality of the plea, the State must produce either a `perfect' transcript of the Boykin colloquy between the defendant and the trial judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an `imperfect' transcript. If anything less than a `perfect' transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary. (Citations omitted).
State v. Hollins, 742 So.2d at 685.
At the habitual offender hearing, the State sought to prove that defendant had two prior felony convictions: a 1992 guilty plea to attempted simple robbery in Docket No. 92-1052 in the Twenty-Fourth Judicial District Court and a 1996 guilty plea to attempted armed robbery under Docket No. 95-6486 in the Twenty-Fourth Judicial District Court. At the hearing, Sergeant Virgil McKenzie, an expert latent fingerprint examiner with the Jefferson Parish Sheriff's Office, testified that defendant's fingerprints, taken shortly before the habitual offender hearing, were "identical" to the fingerprints on the arrest register and the bill of information for the underlying armed robbery conviction (Docket No. 01-5491), the fingerprints on the bill of information for the predicate attempted armed robbery conviction (Docket No. 95-6486), and the fingerprints on the arrest register for the predicate attempted simple robbery conviction (Docket No. 92-1052). Further, the State introduced into evidence the district court record for the underlying armed robbery conviction (Docket No. 01-5491), the predicate attempted armed robbery conviction (Docket No. 95-6486), and the predicate attempted simple robbery conviction (Docket No. 92-1052).
Thereafter, defendant introduced a copy of the transcript of the guilty plea proceeding for defendant's 1992 conviction.[3] Defendant points out that, during the trial judge's guilty plea colloquy, the trial court mistakenly indicated that defendant was pleading guilty to "14:27:65, an armed robbery or attempted armed robbery" when, in fact, defendant was pleading guilty to attempted simple robbery.[4] The trial judge further stated, "The maximum sentence I can impose is three and a half years at hard labor, without the possibility of probation, parole or suspension of sentence for the crime of armed robbery or attempted armed robbery."
At the close of the habitual offender hearing, the trial judge found that record as a whole reflected that defendant was aware that he was charged with and pled guilty to attempted simple robbery. The court noted that the bill of information in case No. 92-1052 indicated that defendant was charged with the violation of La. R.S. 14:27:65, in that he did attempt to rob Joseph Barron on February 8, 1992. The trial judge also noted that the "Boykin form" in case No. 92-1052, which was signed by defendant, defendant's counsel, *84 and the trial judge, indicates that defendant was pleading guilty to La. R.S. 14:27:65. Further, the "Boykin form" provides that the maximum sentence that defendant could receive was three and a half years at hard labor. Most importantly, on the "Boykin form," the defendant acknowledged that "my attorney and the trial judge have explained the nature of the crime to which I am pleading guilty...." Finally, the trial judge noted that the hard labor commitment/minute entry reflected that defendant pled guilty to attempted simple robbery.
Here, with respect to defendant's guilty plea in Docket No. 92-1052, the State presented evidence of the existence of defendant's guilty plea and, further, that he was represented by counsel for that guilty plea. The State met its burden so the burden shifted to the defendant to produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. In this case, defendant alleges that an infringement of his rights occurred because the trial court mistakenly referred to the charge as "an attempted armed robbery."[5] The burden then returns to the State to prove the constitutionality of the plea.
In proving the constitutionality of the plea, the State must produce either a `perfect' transcript of the Boykin colloquy between the defendant and the trial judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an `imperfect' transcript. State v. Hollins, supra, 742 So.2d at 685. If anything less than a `perfect' transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary. Id.
In this case, the State presented a minute entry and guilty plea form for defendant's 1992 guilty plea. Defendant presented the `imperfect' transcript of the proceedings. The trial judge then weighed the entirety of the evidence submitted and found that the State met its burden that defendant's 1992 guilty plea was informed and voluntary. We have reviewed the record as a whole and find no error in the trial judge's ruling.
In his second assignment of error, defendant contends that his sentence is excessive, arguing that a downward departure from the mandatory life sentence was warranted. At trial, defendant objected to the sentence as being excessive and argued that his family background, which included an alcoholic mother, the suicide death of his sister, and the loss of his father at an early age, as well as his own history of drug abuse, justified a deviation from the mandatory life sentence.
The United States and Louisiana Constitutions both prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. art. I, § 20. The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d *85 1276 (La.1993); State v. Cushinello, 01-109 (La.App. 5 Cir.7/30/01), 792 So.2d 926, 929, writ denied, 01-2505 (La.9/20/02), 825 So.2d 1159.
When a trial court determines that the minimum sentence mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment," or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d at 1280; State v. Ventress, 01-1165 (La.App. 5 Cir.4/30/02), 817 So.2d 377, 383. However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 709 So.2d at 676; State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 226.
In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." State v. Harbor, 817 So.2d at 227. When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism.
Further, if the trial court finds clear and convincing evidence that justifies reducing the mandatory minimum sentence, the court cannot impose whatever sentence it may feel is appropriate. Rather, the trial court must impose the longest sentence that is not constitutionally excessive with specific reasons to explain why that sentence is the longest sentence that is not constitutionally excessive. Johnson emphasized that a downward departure from the minimum sentence mandated by La. R.S. 15:529.1 should only occur in "rare situations." State v. Johnson, 709 So.2d at 677.
At the enhanced sentencing, the trial court considered defendant's family history and prior drug abuse and noted that neither was an excuse for his behavior. The trial court further noted that defendant's convictions, all of which were crimes of violence, had escalated in seriousness from his first conviction for attempted simple robbery, to his second conviction for attempted armed robbery and finally, to his third conviction for armed robbery. Finally, the trial judge, after referring to State v. Dorthey, supra, noted that "the Court can find no reason to deviate from the provisions of [the Habitual Offender Statute], with regard to the sentence mandated to someone who is a third felony offender, in which the three felonies are crimes of violence."
Based on our review of the record, we do not find that defendant has shown that he is "exceptional" requiring a downward departure from the mandatory life sentence. The fact that his offenses have escalated in seriousness appears to show that his criminal conduct is becoming worse, and, as such, he is exactly the type of offender that the Habitual Offender Statute intends to punish so severely. See, State v. Lindsey, 99-3256 c/w 99-3302 (La.10/17/00), 770 So.2d 339, 343, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001).
Finally, our review of the record for errors patent, according to La.C.Cr.P. art. 920, reveals none requiring remand in this case. Accordingly, defendant's habitual *86 offender adjudication and enhanced sentence are affirmed.
AFFIRMED.
NOTES
[1] On January 31, 2001, the charge against Barrios was amended to accessory after the fact to armed robbery, a violation of La. R.S. 14:25:64. Barrios was not tried with defendant and is not a party to the instant appeal.
[2] Defendant filed his motion for appeal after his conviction and original sentencing but before his multiple offender sentencing. The resulting prematurity was cured, however, by the subsequent re-sentencing. State v. Balser, 96-443 (La.App. 5 Cir.11/14/96), 694 So.2d 351.
[3] We note that the exhibit folder contains a second copy of the July 13, 1992 guilty plea proceeding in Docket No. 92-1052, which the court reporter, in an attached letter, purports is the "corrected" copy of the transcript. Unfortunately, the "corrected" transcript was not introduced into evidence at the trial court level. Further, the district court record was not properly supplemented with this "corrected" transcript. Documents not properly placed in evidence cannot be considered on appeal. The court of appeal has no jurisdiction to receive new evidence. Phillips v. Space Master Intern., Inc., 96-877 (La.App. 5 Cir.5/14/97), 696 So.2d 64, 69.
[4] We note that the trial judge referred to the correct statute number.
[5] A plea cannot be considered voluntary unless the defendant has notice of the essential nature of the charge against him. State v. Anderson, 00-1737 (La.App. 1 Cir.3/28/01), 784 So.2d 666, 680, writ denied, 01-1558 (La.4/19/02), 813 So.2d 421. The voluntariness of a guilty plea does not depend on whether the trial judge specifically informed the accused of each and every element of the crime. Rather, the defendant must establish that his lack of awareness resulted in an involuntary plea. State v. Hampton, 97-667 (La.App. 5 Cir.3/11/98), 709 So.2d 318, 320, writs denied, 99-2408 (La.2/4/00), 754 So.2d 223 and 01-0083 (La.9/14/01), 796 So.2d 679.