966 So.2d 692 (2007)
STATE of Louisiana, Appellee
v.
Charles Wayne HENRY, Appellant.
No. 42,416-KA.
Court of Appeal of Louisiana, Second Circuit.
September 19, 2007.
*696 Louisiana Appellate Project, by Edward K. Bauman, Lake Charles, for Appellant.
Paul J. Carmouche, District Attorney, Jason Brown, Damon Kervin, John Ford McWilliams, Jr., Assistant District Attorneys, for Appellee.
Before CARAWAY, PEATROSS & MOORE, JJ.
PEATROSS, J.
The jury convicted Defendant, Charles Wayne Henry, for illegal possession of Schedule IV CDS. The trial court found Defendant to be a fourth-felony offender and sentenced him to 25 years at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals. For the reasons set forth below, Defendant's conviction is affirmed and his sentence is affirmed as amended.

FACTS
Sergeant Brian Winn of Shreveport Police Department ("SPD") was conducting undercover surveillance on Benny Harris ("Harris"), the target of an ongoing narcotics investigation, in the Cedar Grove neighborhood of Shreveport on April 14, 2005. Sergeant Winn observed the grey Dodge pick-up truck driven by Harris stop three different times to make contact with three different people, even observing Harris take cash from a female. After seeing the exchange of cash, Sergeant Winn made radio contact with SPD Sergeant Michael Tong and the Caddo Parish K-9 unit and advised them of what he observed. The K-9 unit initiated the stop of Harris's vehicle at the 7500 block of Thornhill, and Sergeant Winn advised Harris that the reason for the stop was suspicion of illegal distribution of narcotics, and obtained his consent to search the vehicle. During the search of the vehicle, Sergeant Winn found a paper bag between the passenger seat and the center console; the bag contained 10 pills of alprazolam, which is popularly known by the brand name "Xanax." Defendant had been sitting in the passenger seat of Harris's truck when they were stopped. After being advised of his Miranda rights, Defendant admitted that the pills were his. He insisted that the pills were pain medication that he had gotten from a friend for his mouth. Sergeant Winn testified that Defendant tried to show him what was wrong with his mouth, but that he could not remember what was the specific problem. When searched, Sergeant Winn found a crack pipe on Defendant.
Since Defendant had been honest in admitting the pills were his, Sergeant Winn offered Defendant the opportunity to purchase narcotics for SPD and assist in narcotics investigations in exchange for not being arrested. Sergeant Winn testified that Defendant initially indicated that he would cooperate and that he gave Defendant phone numbers so he could contact him later; however, when Defendant did not contact Sergeant Winn within two weeks, Sergeant Winn arrested Defendant for possession of Schedule IV CDS. When arresting Defendant on April 28, 2005, Sergeant Winn again advised Defendant of his Miranda rights, and Defendant told him that he traded a rock of crack cocaine *697 in exchange for the pills from a white man and a white female. Defendant further reiterated that the pills were for his mouth pain, but he gave no indication that he had a prescription for the pills.
Defendant testified at trial that, when he was riding with Harris, the stops made were not drug-related; rather, Defendant testified that a lady paid Harris $5 she owed him for giving her a ride to work and that another man was selling Harris a piece of equipment for his cement work. Defendant testified that his mouth was injured in a fight, that the pills were for pain and that he got the pills from his friend, "Gangster Shorty." Defendant admitted that he had a crack pipe, but denied trading crack cocaine for the pills. Defendant maintained that he refused to help police with narcotics investigations from the beginning. According to Defendant, he did not know what Xanax was, but that he thought the pills were for pain. Defendant also admitted some of his prior felony convictions during his testimony.
Based upon the evidence presented at trial, the jury convicted Defendant of illegal possession of Schedule IV CDS.

DISCUSSION
Assignment of Error Number One (verbatim): The evidence was insufficient to sustain a conviction.
Defendant argues on appeal that the State presented no evidence to prove that he intentionally possessed the Xanax. Although admitting that they were his pills, Defendant argues on appeal that he believed that he legally possessed the pills for his mouth pain. The State argues that Defendant's intent to illegally possess the pills could be inferred from the circumstances and that this circumstantial evidence precludes any theory that he was unaware that the pills were a controlled dangerous substance. In support, the State highlights the following circumstances: (1) Defendant was in a high crime area known for drug traffic with someone who was under investigation for narcotics distribution at the time he was found in possession of the pills; (2) Defendant gave a statement to police indicating that he obtained the pills by trading a rock of crack cocaine for them; (3) and Defendant did not obtain them from a licensed pharmacist with a valid prescription issued by a medical doctor, but, instead, got the pills from his friend, "Gangster Shorty."
The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra. In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. State v. Jones, 31,613 (La.App.2d Cir.4/1/99), 733 So.2d 127, writ denied, 99-1185 (La.10/1/99), 748 So.2d 434, citing State v. Ford, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847.
*698 This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, and 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Defendant was guilty of every essential element of the crime. State v. Barakat, 38,419 (La. App.2d Cir.6/23/04), 877 So.2d 223, citing State v. Sutton, 436 So.2d 471 (La.1983), State v. Owens, supra. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Barakat, supra, citing State v. Anderson, 36,969 (La.App.2d Cir.4/9/03), 842 So.2d 1222. To convict a Defendant based upon circumstantial evidence, it must exclude every reasonable hypothesis of innocence. State v. Barakat, supra, citing La. R.S. 15:438.
In order for the jury to convict someone of illegal possession of Schedule IV CDS, the State must present reasonable evidence from which a rational fact finder could determine that the following elements had been proved beyond a reasonable doubt: (1) that Defendant intentionally or knowingly possessed a controlled dangerous substance classified in Schedule IV; and (2) that the substance was not obtained directly or through a valid prescription or order from a practitioner acting in the course of professional practice or except as otherwise provided by the Uniform Controlled Substances Law. La. R.S. 40:969(C).[1]
Xanax is a brand name for alprazolam, which is classified as a Schedule IV CDS. La. R.S. 40:964. In the present case, Defendant consistently admits that the pills *699 were his and that it was pain medication, but that he did not know it was Xanax. Thus, the issue is whether there was sufficient evidence from which a rational fact finder could determine beyond a reasonable doubt that Defendant knowingly possessed a controlled dangerous substance that was classified in Schedule IV.
Guilty knowledge is an essential element of crimes involving possession of contraband and it must be inferred from the known facts according to reason and common experience. State v. Hill, 38,400 (La.App.2d Cir.6/23/04), 877 So.2d 173, citing State v. Lilly, 468 So.2d 1154 (La. 1985); State v. Manning, 38,083 (La. App.2d Cir.3/12/04), 868 So.2d 283; State v. Anderson, supra. Further, specific intent may be inferred from the circumstances surrounding the transactions and the actions of Defendant. State v. Allen, 41,548 (La.App.2d Cir.11/15/06), 942 So.2d 1244, citing State v. Graham, 420 So.2d 1126 (La.1982); State v. Taylor, 621 So.2d 141 (La.App. 2d Cir.1993), writ denied, 93-2054 (La.2/11/94), 634 So.2d 371.
The circumstances in this case indicate that Defendant was aware that he was in possession of a controlled dangerous substance. At the time the pills were found, Defendant had been riding in a vehicle with a person under investigation for narcotics distribution through a neighborhood known as a high-crime area with narcotics traffic. Both Sergeant Winn and Sergeant Tong testified that, when the pills were discovered, Defendant admitted the pills were his and stated that he got them from a friend for his mouth pain. They further testified that Defendant had a crack pipe on his person when he was searched and that he originally agreed to assist them in narcotics investigations to avoid arrest. Both Sergeant Winn and Sergeant Tong testified that, when Defendant was arrested two weeks later, Defendant stated that he traded a rock of crack cocaine to a white man and a white female in exchange for the pills, which he believed to be pain medication for his mouth. Given Defendant's statement that he traded a rock of crack cocaine for the pills that he believed were pain medication, the evidence is sufficient from which a rational fact finder could determine that Defendant knew the pills were a controlled dangerous substance. Further, given Defendant's trial testimony that his friend, "Gangster Shorty," gave him the pills to treat his mouth pain, it is clear that he did not obtain the medication from a licensed pharmacist following the prescription orders of a medical doctor. There was sufficient evidence from which a rational fact finder could determine that Defendant knew he was possessing a controlled dangerous substance and these circumstances exclude all reasonable theories of innocence. This assignment is, therefore, without merit.
Assignment of Error Number Two (verbatim): Defendant was not properly adjudicated a habitual offender.
Defendant argues that the trial court erred in adjudicating him as a habitual offender because the guilty pleas used to support the finding were inadequate. Specifically, in regard to his first predicate offense, Defendant argues that the State failed to present a Boykin transcript of the guilty plea and that this shifted the burden of proof to the State; Defendant also challenges the State's proof of identity in regard to this predicate offense. In regard to the second predicate offense, his 1985 conviction for attempted simple burglary, Defendant argues that the trial court incorrectly informed him of his right to a trial when it said that at least a majority of the jurors would have to vote to convict him.
*700 The State argues that this claim should not be considered on appeal pursuant to La. R.S. 15:529.1(D)(1)(b) because Defendant failed to file a written response to the habitual offender bill of information. The State argues that it met its burden of proving Defendant's identity and that Defendant was represented by counsel at his guilty plea through the presentation of the bills of information and court minutes. In regard to the 1985 conviction for attempted simple burglary in Docket No. 131,026, the State asserts that Defendant presented no evidence that he was improperly instructed on his right to a jury trial. The State asserts that, even if that predicate offense was insufficient, it still presented sufficient proof of three other predicate offenses. The State also asserts that ten years had not elapsed since his release from supervision in his conviction for Docket No. 150,642 until the time of the present offense, which was committed on April 14, 2005; however, the State asks that the case be remanded so that it may present additional evidence if this court were to find that the State did not present sufficient evidence regarding the ten-year cleansing period.
In regard to the State's argument that this issue is not properly before this court for appellate review due to Defendant's failure to file a written response to the habitual offender bill of information, La. R.S. 15:529.1(D)(1)(b), in pertinent part, provides the following:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden or proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. . . . Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
While the statute clearly requires a defendant to file a written objection to a habitual bill of information when challenging the validity of a prior felony conviction, the plain language of the statute only precludes appellate review of such errors when no challenge is made prior to sentencing. Further, an oral objection at the habitual offender hearing can be sufficient to preserve the issue for appeal despite a failure to file a written objection to the habitual offender bill of information. State v. Kunzman, 31,976 (La.App.2d Cir.5/5/99), 741 So.2d 112; State v. Wuneburger, 03-490 (La.App. 5th Cir.10/15/03), 860 So.2d 78, writ denied, 03-3357 (La.1/7/05), 891 So.2d 673; State v. Santee, 02-0693 (La. App. 4th Cir.12/4/02), 834 So.2d 533.
The record in the present case indicates that Defendant did not receive discovery of the documentation of the prior felony convictions until the day of the habitual offender hearing, and the record indicates that Defendant made these objections at the hearing. Defendant's oral objection at the habitual offender hearing, therefore, were sufficient to preserve the alleged errors for appellate review in spite of failure to file a written objection to the habitual offender bill of information.
In habitual offender proceedings where a defendant denies the prior convictions, *701 the State bears the burden of proving the existence of the prior convictions and that the defendant was the same person who committed those prior offenses. State v. Gray, 41,732 (La.App.2d Cir.1/10/07), 948 So.2d 335. When proving that a defendant is the same person convicted in the earlier proffered predicate offenses, the State may accomplish this through different means, "including the testimony of witnesses, expert testimony as to the fingerprints of the accused when compared to those in the prison record introduced or by photographs contained in the duly authenticated record." State v. Gray, supra.
In regard to proving the existence of prior guilty pleas for the purpose of habitual felony offender sentencing, the State bears the initial burden of proof:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.)
State v. Zeigler, 41,617 (La.App.2d Cir.12/20/06), 945 So.2d 946, quoting State v. Shelton, 621 So.2d 769 (La.1993). Furthermore, "[w]here the record establishes that an accused was informed of and waived his rights to trial by jury, to confrontation, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary." State v. Scott, 34,949 (La. App.2d Cir.1/25/02), 823 So.2d 960, writ denied, 02-1622 (La.5/16/03), 843 So.2d 1122, citing State v. Youngblood, 32,003 (La.App.2d Cir.5/5/99), 740 So.2d 687.
At the habitual offender hearing and on appeal, Defendant challenges the use of two of the predicate offenses, the first predicate offense, docket no. 106,696, indecent behavior with a juvenile, and the second predicate offense, docket no. 131,026, attempted simple burglary. We review, therefore, whether the trial court properly considered those predicate offenses.
Predicate Offense in Docket No. 106,696, Indecent Behavior With a Juvenile
Defendant challenges use of this predicate offense on the grounds that the State failed to properly prove identity for this offense and failed to produce a Boykin transcript of his guilty plea. As proof of this predicate offense, the State presented a bill of information charging Defendant with attempted aggravated rape, an amended bill of information charging Defendant with indecent behavior with a juvenile and court minutes showing that Defendant was represented by counsel when he pleaded guilty to the amended charge *702 of indecent behavior with a juvenile on February 24, 1978. At the habitual offender hearing for the case sub judice, SPD Corporal Tommy Rachal was qualified as an expert witness in fingerprint examination and analysis, and he took Defendant's fingerprints in open court. The State presented a certified copy of the fingerprints taken when Defendant was booked on the original charge of attempted aggravated rape in Docket No. 106,696. Corporal Rachal examined the right thumb print from that booking sheet, compared it to the fingerprints taken of Defendant in open court and determined that Defendant was the same person who was convicted in Docket No. 106,696.
Defendant's argument that the State failed to prove his identity in regard to this predicate offense is without merit. The Louisiana Supreme Court has repeatedly held that the Habitual Offender Act "does not require the State to use a specific type of evidence to carry its burden at an habitual offender hearing and that prior convictions may be proved by any competent evidence." State v. Payton, 00-2899 (La.3/15/02), 810 So.2d 1127, quoting State v. Lindsey, 99-3202 (La.10/17/00), 770 So.2d 339. See also, State v. Davenport, 33,961 (La.App.2d Cir.11/1/00), 771 So.2d 837, writ denied, 00-3294 (La.10/26/01), 799 So.2d 1150. Concerning this predicate offense, Defendant also admitted that he had been convicted of indecent behavior with a juvenile during his trial testimony. Accordingly, the State presented sufficient evidence to prove that Defendant was the same person who was convicted of indecent behavior with a juvenile in Docket No. 106,696.
Defendant also argues on appeal that the State's failure to present a Boykin transcript of this guilty plea shifted the burden of proof to the State to prove that Defendant had been properly informed of his Boykin rights when he pleaded guilty. This argument has been repeatedly rejected by this court, as evidenced by a recent holding in State v. Zeigler, supra, where Defendant argued that the State's failure to present a Boykin transcript was evidence of an infringement or irregularity. This court found that presentation of the court minutes indicating that Defendant was represented by counsel at the time he pleaded guilty was sufficient to meet its burden of proof under State v. Shelton, supra, and that this shifted the burden of proof to Defendant to present affirmative evidence of an infringement of his rights or an irregularity in the proceedings. Zeigler, supra. This court further rejected the argument that the failure to present the Boykin transcript was evidence of an infringement or irregularity. Zeigler, supra.
Accordingly, the State met its burden of proof under State v. Shelton, supra, because the State presented a certified copy of the court minutes showing that Defendant was represented by counsel when he pleaded guilty to indecent behavior with a juvenile in Docket No. 106,696. Defendant presented no affirmative evidence of an infringement upon his rights or a procedural irregularity, and the absence of a Boykin transcript does not constitute evidence of such.
Predicate Offense in Docket No. 131,026, Attempted Simple Burglary
Defendant argues that his conviction for attempted simple burglary in Docket No. 131,026 should not be used against him because the Boykin transcript showed that he had been improperly instructed on his right to a jury trial. We do not address this argument because, even without using the predicate offense of attempted simple burglary in Docket No. 131,026, the State presented three other valid predicate offenses. As noted above, the State met its *703 burden in regard to Docket No. 106,696. Defendant does not challenge the State's proof in regard to the remaining two predicate offenses, Docket No. 123, 679, for attempted simple burglary on January 4, 1984, and Docket No. 150,642, for attempted simple burglary on June 21, 1991. The record reflects that the State met its burden of proof for the remaining two predicate offenses and Defendant did not present any affirmative evidence to show that these prior felony convictions should not be used to enhance Defendant's sentence for his current conviction. The trial court, therefore, properly adjudicated Defendant as a fourth-felony offender based upon these three prior convictions and his current conviction for possession of Schedule IV CDS.
This assignment is, therefore, without merit.
Assignment of Error Number Three (verbatim): The twenty-five year sentence imposed upon Defendant was unconstitutionally excessive and imposed without adequate compliance with La. C. Cr. P. Art. 894.1.
Defendant argues that his 25-year sentence without benefit of parole, probation or suspension of sentence is constitutionally excessive for his conviction of possession of Schedule IV CDS, in spite of it being in the lower sentencing range for a fourth-habitual offender. Defendant also argues that the trial court failed to articulate a justification for this sentence. Defendant argues that the trial court should deviate from the minimum sentence of 20 years for a fourth-habitual offender because the primary reason for his sentence, his criminal history, does not include crimes of violence or drug offenses and because there were no other aggravating circumstances to justify the sentence. Defendant argues that the record does not indicate that the trial court considered Defendant's personal history, that it did not order a pre-sentence investigation and that it did not adequately comply with the requirements of La. C. Cr. P. art. 894.1. Defendant requests this court to vacate the current sentence and remand it to the trial court with instructions to articulate sufficient reasons for the sentence imposed.
The State argues that the trial court did not abuse its discretion in sentencing Defendant to 25 years because he was found to be a fourth-felony offender, which made him eligible for a sentence of 20 years to life. The State argues that the trial court adequately considered the sentencing factors of La. C. Cr. P. art. 894.1, which is evidenced by its finding that this Defendant was a fourth-habitual offender, that this was Defendant's fifth-felony conviction, that he was a career criminal who lacked remorse for the present crime and that any lesser sentence under the circumstances would be inappropriate. The State further argued that compliance with La. C. Cr. P. art. 894.1 does not require the trial court to discuss every sentencing factor contained therein. We agree.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance *704 with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are Defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La. App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 04-2606 (La.6/24/05), 904 So.2d 728.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of Defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385. The trial court shall exercise its sentencing discretion to impose sentences according to the individualized circumstances of the offense and the offender. State v. Rogers, 405 So.2d 829 (La. 1981). A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). While given wide discretion to impose a sentence within the statutory limits, the sentence imposed by the trial court should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7, citing State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330, State v. Washington, 414 So.2d 313 (La.1982); State v. Abercrumbia, 412 So.2d 1027 (La.1982); State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Cook, supra.
As previously stated, the trial court found Defendant to be a fourth-felony offender and sentenced him to 25 years without benefit of parole, probation or suspension of sentence. The sentencing range for fourth-felony offenders is "for a term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life." La. R.S. 15:529.1(A)(1)(c)(i). Accordingly, the trial court imposed a sentence within the lower-range of the sentencing statute. Defendant was given the opportunity to avoid arrest by cooperating with law enforcement in other narcotics investigations and Defendant rejected the State's plea offer of five years. Defendant was also given the opportunity for a pre-sentence investigation, but turned it down because his counsel believed that a reporting of Defendant's past misdemeanor offenses could be harmful. The record indicates that the trial court heard the arguments of counsel and that Defendant personally addressed the trial court before sentencing. Prior to imposing sentence, the trial court inquired into Defendant's age, which was 49 years old. The trial court noted the following reasons for the sentence it imposed:

*705 It's the sentence of the Court that you serve 25 years in prison [at] hard labor. This is actually your fifth felony offense. You're adjudicated as a fourth felony offender. The evidence of your guilt was beyond any reasonable doubt. It appears to the Court that you're incalcitrant about the offense. You're still arguing when the guilt was overwhelming, shows to me no remorse for what you've done and you're what in layman's terms would be considered a career criminal. I think any lesser sentence is inappropriate.
Thus, a review of the record indicates that the trial court was cognizant of the sentencing considerations of La. C. Cr. P. art. 894.1.
Defendant argues that the trial court should have made a downward departure from the mandatory minimum sentence of 20 years required by La. R.S. 15:529.1(A)(1)(c)(i) because his prior offenses were for non-violent felonies and were not for other drug offenses. In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the Louisiana Supreme Court explained the circumstances in which a downward departure from the mandatory minimum habitual offender sentence is warranted, finding that it is rare and only warranted under exceptional circumstances. The court noted that, although the Louisiana Legislature has the authority to define criminal conduct and to provide penalties for that conduct, the judiciary retains the ability to find sentences excessive under Article I, Section 20, of the Louisiana Constitution. State v. Johnson, supra, citing State v. Sepulvado, 367 So.2d 762 (La.1979). While having found that the Habitual Offender Law in its entirety is constitutional and that minimum sentences imposed under this statute are also presumed to be constitutional, the court recognized that this power to exercise a downward departure from the mandatory minimum sentence extends also to sentences for multiple offenders. State v. Johnson, supra. The sentencing judge must begin with the presumption that the mandatory minimum sentence is constitutional. Id., citing State v. Dorthey, supra; State v. Young, 94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223. The court may only depart from the minimum sentence if it finds that Defendant presented "clear and convincing evidence" to rebut that presumption of constitutionality, which requires a showing that "[he] is exceptional, which in this context means that because of unusual circumstances this Defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, supra, quoting State v. Young, supra (Plotkin, J., concurring).
Further, the court noted that a trial court wishing to give a sentence lesser than the mandatory minimum under the Habitual Offender Law cannot solely rely upon the non-violent nature of the instant crime or of the past crimes as a justification for doing so:
While the classification of a Defendant's instant or prior offenses as non-violent should not be discounted, this fact has already been taken into account under the Habitual Offender Law for third and fourth offenders. LSA-R.S. 15:529.1 provides that persons adjudicated as third or fourth offenders may receive a longer sentence if their instant or prior offense is defined as a "crime of violence" under LSA-R.S. 14:2(13). Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not. Under the Habitual *706 Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a Defendant's record of nonviolent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence to be excessive.
State v. Johnson, supra.
The trial court must also keep in mind the goals of the Habitual Offender Law, which include the deterrence and punishment of recidivism. State v. Johnson, supra. Even when the trial court does view a downward departure from the mandatory minimum sentence as necessary to avoid imposition of an unconstitutionally excessive sentence, it must impose the longest sentence that is not constitutionally excessive and "articulate specific reasons why the sentence he imposes instead of the statutory mandatory minimum is the longest sentence which is not excessive under the Louisiana Constitution" in order to "give as much deference as constitutionally possible to the Legislature's determination of the appropriate minimum sentence for a habitual offender." State v. Johnson, supra.
Applying the reasoning from State v. Johnson, supra, to the present case, we do not find that a sentence less than the mandatory minimum under the Habitual Offender Law is required. The trial court rejected that argument and imposed a sentence slightly higher than the mandatory minimum. Defendant did not present clear and convincing evidence that his circumstances were exceptional or that he was the victim of the legislature's failure to assign sentences meaningfully tailored to his culpability, to the gravity of his offense or to the circumstances of his case.
This assignment is, therefore, without merit.
Errors Patent: (1) Trial court improperly imposed sentence without benefit of parole; and (2) Trial court failed to notify Defendant of time for filing post-conviction application as required by La. C. Cr. P. art. 930.8.
Our error patent review reveals that the trial court improperly imposed sentence without the benefit of parole. The trial court found Defendant to be a fourth-felony offender and sentenced him to 25 years at hard labor without benefit of parole, probation or suspension of sentence. According to La. R.S. 15:529.1(G), all habitual offender sentences are to be imposed without benefit of probation or suspension of sentence. Although La. R.S. 15:574.4(A)(1) states that "[a] person convicted of a third or subsequent felony offense shall not be eligible for parole," the Louisiana Supreme Court has consistently held that, when a Defendant is sentenced under a statute that contains no prohibition of parole, the district court must sentence Defendant to a term that does not include such a prohibition because parole eligibility under La. R.S. 15:574.4 is to be determined by the Department of Corrections. State ex rel. Porter v. State, 04-2080 (La.11/28/05), 916 So.2d 123; St. Amant v. 19th Judicial District Court, 94-0567 (La.9/3/96), 678 So.2d 536. Although Defendant is a fourth-habitual offender, the trial court should not have imposed sentence without benefit of parole because the statute under which he was convicted contains no prohibition on parole. See La. R.S. 40:969(C)(2). Defendant's parole eligibility as a fourth-habitual offender under La. R.S. 15:574.4 is a determination for the Department of Corrections to make. Defendant's sentence, therefore, is amended *707 to 25 years at hard labor without benefit of probation or suspension of sentence.
Error patent review also reveals that the trial court failed to advise Defendant at sentencing that he has two years from the time of the finality of his conviction and sentence to seek post-conviction relief as required by La. C. Cr. P. 930.8. The statute contains supplicatory language which does not bestow an enforceable right on an individual Defendant. State v. Hunter, 36,692 (La.App.2d Cir.12/20/02), 834 So.2d 6. Furthermore, this defect has no bearing on whether the sentence is excessive and, thus, is not grounds to reverse the sentence or to remand the case for re-sentencing. State v. Ferrell, 26,649 (La.App.2d Cir.12/7/94), 647 So.2d 427. Defendant is advised by this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C. Cr. P. arts. 914 and 922.

DECREE
For the foregoing reasons, the conviction of Defendant, Charles Wayne Henry, is affirmed. His sentence is amended and, as amended, is affirmed.
CONVICTION AFFIRMED. SENTENCE AMENDED, AND, AS AMENDED, AFFIRMED.
NOTES
[1] At the time the present offense was committed, the statute actually stated that it was also unlawful to "unknowingly" possess a Schedule IV CDS. In State v. Brown, 389 So.2d 48 (La.1980), quoting Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), the Louisiana Supreme Court found, however, that it was unconstitutional to criminalize the unknowing possession of Schedule IV CDS because "the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American jurisprudence." Even so, the Louisiana Supreme Court found that the remainder of the statute was constitutional and enforceable against those who knowingly possessed such substances. State v. Brown, supra. In 2005 Act of Louisiana 14, the Louisiana Legislature amended to statute to remove the language that criminalized the unknowing possession of Schedule IV CDS.