MOORE, J.
The defendant, Amethyst Baird Rathore, was charged by grand jury indictment with attempted first degree murder of Wildlife Enforcement Officer Tyler Wheeler. The indictment also charged Rathore with obstruction of justice, illegal possession of stolen things, and illegal possession of a stolen firearm. Rathore entered guilty pleas to all four charges pursuant to a plea agreement. In exchange for the plea, the state agreed to dismiss a pending obstruction of justice charge in Ouachita Parish. There was no agreement regarding Rathore's sentence, and the state advised that it would file an habitual offender bill in accord with La. R.S. 15:529.1.
After the habitual offender hearing, Rathore was adjudicated a second-felony habitual offender based on her prior conviction for possession of methamphetamine. Following the sentencing hearing, the court sentenced Rathore to 60 years' imprisonment at hard labor for the attempted first degree murder conviction, 40 years' imprisonment for the obstruction of justice, 10 years' imprisonment for the illegal possession of stolen things, and 10 years' imprisonment for the illegal possession *1102 of a stolen firearm. All four sentences were imposed without benefit of parole, probation or suspension of sentence. The court subsequently signed a sentencing commitment order making the sentences concurrent with each other.[1]
Rathore filed this appeal alleging that her sentences are excessive.
After review, we amend three of the sentences to allow for parole eligibility as required by law, and, as amended, we affirm.
FACTS
At the sentencing hearing, the victim, Wildlife and Fisheries Agent Tyler Wheeler, testified that on January 7, 2017, he was working the 2:00 pm to 2:00 am shift with his partner, Agent John Hattaway. After their shift ended, the two agents traveled to their respective homes in separate vehicles. On his way home, at about 2:10 am, Agent Wheeler encountered a white Jeep erratically moving side to side in the outside lane, repeatedly hitting the center line and the outside shoulder line of the roadway. Since this occurred in an area outside of Bastrop where there are several bars, Wheeler suspected that the driver was impaired. He activated his blue emergency lights to initiate a stop. However, instead of stopping, the Jeep switched to the inside lane, turned off the road and looped through a grass field on the south side of a bar located on Gus Pryor Road. The Jeep came to a stop against a grill on the side of the building. Agent Wheeler followed and parked his vehicle some 5 to 7 feet behind the Jeep.
Agent Wheeler approached the driver in the Jeep, whom he identified in court as Amethyst Rathore, and advised her why she had been stopped. She handed him an identification card, but it was for a juvenile, and Rathore was obviously not a juvenile. Agent Wheeler returned to his vehicle and performed a "Think Stream" check on the vehicle's license plate, which revealed the plate did not match a white Jeep. He notified dispatch of his findings. Agent Hattaway informed Agent Wheeler that he was en route to the scene.
Due to Rathore's rapid speech pattern, quick movements, and impaired driving, Agent Wheeler walked up to the Jeep and asked her to exit the vehicle for a field sobriety test.
Rathore did not respond to his request. Instead, she produced a silver revolver with a red laser attachment and shot Agent Wheeler from the outside driver's side window. Although Agent Wheeler testified that he recalled Rathore firing only once, the evidence indicates, and police believe, that she shot him three times. Wheeler ran to the back of the Jeep, but could not get his service weapon out of the holster. He ran behind a tree on the south side of the bar. Still unable to unholster his weapon, Agent Wheeler ran toward his truck to retrieve his rifle or shotgun but fell forward face down. He heard Rathore exit the Jeep and walk toward him. He then heard a gunshot and felt a punch to his upper back. Agent Wheeler heard Rathore's vehicle back up and leave the scene.
Within a minute after Rathore left the scene, Agent Hattaway arrived and called for medical assistance. Agent Wheeler was airlifted to University Health in Shreveport. Although he had been shot four times, Agent Wheeler testified that he did not realize that the first three shots had struck him. One entry wound under his left arm traveled upward and lodged *1103 around his collarbone, while two went through the left forearm into his head. The final shot by Rathore while she stood over him struck Agent Wheeler in the back. However, the bullet did not completely penetrate his armored vest, and left Agent Wheeler with a bruise.
Agent Wheeler testified that he remained at University Health for three to four weeks. Doctors removed his left jaw and right skull plate, and noted that a bullet which entered his left temple and ricocheted to the back of his skull still remains.
Rathore testified that she "did not fire any shot," as the gun just went off four times in succession, but that she had not aimed it. She stated that she never exited the vehicle to fire at Agent Wheeler, and he was still standing when she drove away. When asked how a bullet became lodged in the back of Agent Wheeler's vest, Rathore suggested that he might have been wearing it inside out. Rathore alleged that, several days before the shooting, she sustained a concussion during an altercation with her boyfriend; when she woke up the next day, she wasn't herself and was afraid of everything. When Agent Wheeler pulled her over, she was afraid of him as a result of the concussion. She testified that she pulled the gun out because she was afraid, not because she intended to shoot him.
On cross-examination, Rathore admitted that she did not seek medical attention for her alleged concussion, and that she was able to drive herself to Memphis, Tennessee, and back between sustaining the concussion and shooting Agent Wheeler. Rathore is 32 years old and has a nine-year-old daughter who lives with her sister in Charleston, South Carolina. She apologized to Agent Wheeler and his family.
Agent Ron Huey, of the Louisiana State Police, testified that in the course of his investigation of the shooting, he obtained text messages between Rathore and a witness, Ms. Starr. In messages sent in December 2016, Rathore acknowledged that the Jeep she was driving at the time of the offense was stolen, stating that the Jeep needed a new title and VIN. She also stated that she recently acquired a new handgun with a laser sight. Following the shooting, Rathore abandoned the Jeep near an RV park and instructed Ms. Starr to pick her up, saying that she had a life-and-death situation. Rathore told Ms. Starr that she had shot an officer because she had missed court and there was a warrant for her arrest. At Ms. Starr's residence, Rathore wiped down the gun and put it in a cabinet.
DISCUSSION
Excessive Sentence
In her sole assignment of error, Rathore alleges that her sentences of 60 years, 40 years, and two of 10 years, all at hard labor and all without benefit probation, parole or suspension of sentence, make the total sentence cruel and excessive. She asks this court to remand for resentencing.
To support her argument, Rathore maintains that facts established at the sentencing hearing showed that she had no intent to kill Agent Wheeler. Her actions, she argues, were due to the influence of a concussion that had been sustained several days before the shooting. Rathore expressed remorse for her actions, asserts that she has a nine-year-old daughter who depends upon her, and shows that this is her first conviction for a violent offense.
The state counters that Rathore's criminal history shows an escalation in the severity of offenses over a short period of time. This latest criminal action shows a blatant disregard and lack of respect for human life. Disputing her claim that she did not intend to shoot Agent Wheeler, the *1104 state stresses the fact that Rathore got out of the Jeep, walked up to Wheeler lying on the ground and shot him in the back, thereby showing that she had specific intent to kill him. The state urges that Rathore has shown little remorse, and attempted to excuse her criminal behavior by attributing her actions to an alleged concussion; the state concludes that Rathore has not shown that the trial court abused its discretion in sentencing.
This court applies a two-pronged test in determining whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. However, a trial court is not required to list every aggravating or mitigating circumstance, so long as the record reflects that it has adequately considered the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. Watson , 46,572 (La. App. 2 Cir. 9/21/11), 73 So.3d 471. The goal of La. C. Cr. P. art. 894.1 is "articulation of the factual basis for a sentence, not rigid or mechanical compliance with its provisions." State v. Lanclos , 419 So.2d 475 (La. 1982).
Second, the reviewing court determines the issue of constitutional excessiveness. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith , 01-2574 (La. 1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 01-0467 (La. 1/15/02), 805 So.2d 166. The trial court is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of this discretion. State v. Williams , 03-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Diaz , 46,750 (La. App. 2 Cir. 12/14/11), 81 So.3d 228. In its review, the appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams , supra .
The habitual offender law has been found constitutional in its entirety, and the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson , 97-1906 (La. 3/4/98), 709 So.2d 672. The defendant has the burden to rebut the presumption that a mandatory minimum sentence is constitutional. This means she must clearly and convincingly show that her situation is exceptional, that because of unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson , supra ; State v. Henry , 42,416 (La. App. 2 Cir. 9/19/07), 966 So.2d 692, writ denied , 07-2227 (La. 8/29/08), 989 So.2d 95. Critically, a district court may not rely solely on the nonviolent nature of the instant crime or past crimes as evidence to justify rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the major reason, for declaring such a sentence excessive. Johnson , supra ; Henry , supra .
There is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same date, whether the convictions result from separate felonies committed at separate times or arise out of a single criminal act or episode. State v. Shaw , 06-2467 (La. 11/27/07), 969 So.2d 1233.
*1105 Our habitual offender law is promulgated in La. R.S. 15:529.1(A)(1) and provides in the case of a second-felony offender that, if the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction. The convictions in this case are: attempted first degree murder of a peace officer, which is punishable by 20-50 years' imprisonment at hard labor, without the benefits of parole, probation, or suspension of sentence ( R.S. 14:27 and 14:30 ); obstruction of justice, imprisonment for not more than 20 years at hard labor ( R.S. 14:130.1(B)(2) ); illegal possession of stolen things, when the value is $1,500 or more, imprisonment for not more than 10 years, with or without hard labor ( La. R.S. 14:69(B)(1) ); and, illegal possession of a stolen firearm, imprisonment for one to five years, with or without hard labor ( R.S. 14:69.1(B)(1) ).
In this case, the district court sentenced Rathore as second-felony habitual offender to 60 years' imprisonment at hard labor for the conviction of attempted first degree murder, 40 years' imprisonment for obstruction of justice, 10 years' imprisonment for illegal possession of stolen things, and 10 years' imprisonment for illegal possession of a stolen firearm. By operation of law, the sentences will be served concurrently. La. C. Cr. P. art. 883.
The record shows that after it reviewed the presentence investigation report and held a sentencing hearing in which both Agent Wheeler and Rathore testified, the district court specifically found the victim's testimony to be more credible. The court noted that Rathore testified that she kept four bullets in the gun, and she fired all four bullets at Agent Wheeler, striking him four times. The court found that her attempt to kill an officer by emptying a firearm at him is a serious and egregious offense.
The court stated that Rathore has a history of drug abuse, she was driving a stolen vehicle at the time of the offense, and the offense was committed with a stolen weapon. Rathore attempted to dispose of the vehicle and the weapon, thereby obstructing justice. Despite these circumstances, the court did not impose the statutory maximum for attempted first degree murder or for illegal possession of stolen things, as a second-felony habitual offender. The court did impose the maximum sentence for obstruction of justice and illegal possession of a stolen firearm.
We observe that while Rathore expressed remorse for injuring Agent Wheeler, she did not take responsibility for the shooting. Instead, she attributed her actions to a concussion without offering any evidence of such a condition, and she denied shooting Agent Wheeler in the back, despite evidence to the contrary. Following the shooting, Rathore attempted to conceal the offense by cleaning the weapon and trying to dispose of the Jeep. She denied these activities, leading the court to impose the maximum sentence for obstruction of justice.
Rathore's criminal history revealed that she was arrested four times in 2016, for increasingly serious offenses. On April 28, 2016, she was arrested in Ouachita Parish for simple burglary and illegal possession of stolen things, and charged with illegal possession of stolen things and criminal trespass. On November 4, 2016, while on bond, Rathore was arrested on six charges, including no driver's license in possession, taking contraband to a state-owned hospital, and possession of methamphetamine. Because Rathore missed her arraignment date in that case, the district *1106 court revoked her bond in both cases on January 10, 2017. These facts lend credence to Agent Huey's testimony that Ms. Starr reported that Rathore shot Agent Wheeler because there was a warrant for her arrest.
Based on our review of this case, including Rathore's increasing criminal activity in the year prior to this offense, the severity of the injuries sustained by the victim, the egregiousness of the offense, and the unwillingness of Rathore to take full responsibility for her actions, the sentences imposed do not shock the sense of justice, nor are they grossly disproportionate to the offenses. We conclude that the trial court was well within its discretion in imposing these sentences, which are not excessive. This assignment of error is without merit.
Error Patent Review
Our review of the sentences discloses that the sentences for obstruction of justice, illegal possession of stolen things, and illegal possession of a firearm were improperly imposed without the benefit of parole. La. R.S. 15:529.1(G) provides that any sentence imposed under the habitual offender statute "shall be at hard labor without benefit of probation or suspension of sentence." Parole is not included in the prohibition.
In Rathore's case, only attempted first degree murder is punishable by imprisonment without all three benefits. The sentences for obstruction of justice, illegal possession of stolen things, and illegal possession of a firearm were improperly imposed without the benefit of parole.
An appellate court is authorized to correct an illegal sentence pursuant to La. C. Cr. P. art. 882(A), when the sentence does not involve the exercise of sentencing discretion by the trial court. See State v. Haynes , 04-1893 (La. 12/10/04), 889 So.2d 224. The correction of this error does not involve sentencing discretion, as the imposition of the sentence without the benefit of probation or suspension of sentence is mandatory in the habitual offender statute.
Accordingly, we amend Rathore's sentences for obstruction of justice, illegal possession of stolen things, and illegal possession of a firearm to remove the prohibition against parole eligibility, and to reflect that they be served without benefit of probation or suspension of sentence.
CONCLUSION
For the reasons stated in this opinion, we amend the defendant's sentences for obstruction of justice, illegal possession of stolen things, and illegal possession of a firearm by removing the prohibition against parole but must be served without benefit of probation or suspension of sentence. In all other respects, the convictions and sentences are affirmed.
AFFIRMED AS AMENDED.

Initially, the sentencing judge expressly declined to specify whether the sentences would run concurrently or consecutively, stating that he would leave that to the law.