MOORE, J.
|,The defendant, Johnny Thompson, Jr., was convicted of theft of more than $500, but less than $1,500, in violation of La. R.S. 14:67. Adjudicated a fourth-felony habitual offender, Thompson was sentenced to serve 36 years at hard labor without the benefit of probation or suspension of sentence. He now appeals, alleging that the evidence was insufficient to convict and his sentence is excessive. For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
On the morning of October 3, 2013, Tammy Fatheree, the manager of the Family Dollar store in Bastrop, Louisiana, followed her normal procedure for opening the store. She counted the petty cash, put the tills in the registers, and moved certain items from the store out onto the sidewalk. Fatheree counted $900 in petty cash, including $715 in bills and the remainder in coins. She placed the bills in a bag and put the bag and coins in the bottom of a safe located at the front of the store. Con *1141 trary to store policy, Fatheree did not close the safe door because if she needed access to petty cash to make change she would have to wait five minutes for the safe to open if it was locked. ' Fatheree opened the store at '9:00 a.rh. and began stocking groceries at the back of the store.
About 20 minutes later, Fatheree heard a clicking sound which she perceived to be the safe door closing. She immediately returned to the front of the store and saw that the safe had been closed. She entered the code to the safe and waited five minutes until the safe opened. The bag containing $715 was missing. She called the assistant store manager and asked her to come to the store to view the surveillance videotapes while -she watched |2over the store. Fatheree also viewed the surveillance videotapes and saw an African-American male wearing a white shirt with the words “Fast Tax” on the front, • retrieve something from the safe. Fatheree called the police, who responded to the store.
Sergeant Marvin Holmes, of the Bastrop Police Department, who' assisted with the investigation of the theft, viewed the surveillance videotapes and recognized the defendant, Johnny Thompson, Jr., as the man taking the money from the safe. Thompson was subsequently charged with the felony theft of the cash from the Family Dollar store. The state offered Thompson a plea deal whereby it would agree to dismiss other pending charges (including forgery and domestic abuse) in exchange for his guilty plea for felony theft with a five-year hard labor sentence, and the state would not file an habitual offender bill. The prosecutor noted that if Thompson rejected the plea offer and was convicted, it would file an habitual offender bill.
Thompson rejected the offer in open court, and trial proceeded.
At trial, during cross-examination, when asked why the' police report noted that $788 had béen stolen from the safe, Fath-eree admitted that she initially miscalculated the amount stolen. She did not keep a Written record of how many bills were kept in the safe. However, Fatheree explained that she always put $900 in the safe, so after she recounted the coins, she determined that $715 in bills had been taken from the safe. Additionally, .after the store closed, Fatheree counted the money from the registers and the safe and noted that $715 was missing from the store.
Three surveillance videos from the Family Dollar store were played in open court. The tapes show an African-American male enter the store | swearing a black baseball cap, black pants and a white shirt with “Fast Tax” written on the front. He walked into the store, looked around, and took something from the safe.
■ Sergeant Marvin Holmes testified that when he came into contact with the defendant on October 8, 2013, the defendant was wearing the same “Fast Tax” white shirt seen on the surveillance video. The defendant made a statement to police denying that he was the person in the videotapes.
The defendant testified in his own defense. He admitted he took the bag of money from the safe, but claimed that it contained only $240-$100 in one-dollar bills, $100 in five-dollar bills and $40 in twenty-dollar bills. He denied telling Sergeant Holmes that he was not the man in the surveillance videotapes.
Following the defendant’s testimony, the trial court found him guilty of theft in ,the amount of $715 and ordered a presentence investigation report (PSI).
Subsequently, the state filed an habitual offender bill of information charging the defendant as a fourth or subsequent felony offender. Specifically, the state alleged *1142 that along, with his most recent felony theft conviction, the defendant had previously been convicted of the following felony offenses: (1) felony theft on October 13, 2009; (2) possession of cocaine on July 2, 2007; (3) possession of cocaine on March 8, 2006; (4) possession of cocaine, second offense, on May 14, 2003; (5) possession of cocaine on January 22, 2002; (6) simple burglary on March 1,-1999; and (7) second degree battery on October 30, 1997. The defendant was arraigned on the habitual offender charge the same day, and he denied the allegations.
|40n October 16, 2014, the, defendant appeared in court and his fingerprints were placed on the habitual offender bill of information charging him with the September 29, 2014, felony theft conviction.
On March 27, 2016, the defendant' appeared for his habitual offendér hearing. Rene Johnson, an identification expert and police officer with the Ouachita Parish Police Department, identified a certified copy of the bill of information corresponding to the defendant’s September 29, 2014, felony theft conviction that contained his fingerprints. Officer Johnson also took the defendant’s fingerprints in open court. Officer Johnson identified bills of information containing fingerprints matching those taken from the defendant for the following convictions: (1) felony theft on October 13, 2009; (2) possession of cocaine on July 2, 2007; (3) possession of cocaine on March 8, 2006; (4) possession of cocaine, second offense, on May 14, 2003; (5) simple burglary on March 1, 1999; and (6) second degree battery on October 30, 1997. The state additionally introduced minute entries and guilty plea colloquies for all of the convictions except the October 30, 1997, conviction. The state also introduced a minute entry relating , to a guilty plea purportedly made by the defendant for a January 2002 conviction for possession of cocaine; the state did not introduce a corresponding bill of information with fingerprints for the conviction.- The items were .admitted into evidence and the trial court held that the defendant was at least a fourth, but probably an eighth, felony offender. The state filed two memoranda requesting that the trial court impose the maximum sentence applicable.
At the sentencing hearing on April 2, 2015, the trial court reviewed the sentencing factors set forth in La. C. Cr. P. art. 894.1, the applicable maximum and minimum sentences under the Habitual Offender Law, and | ^letters submitted on the defendant’s. behalf. The defendant had five grown children, four grandchildren who lived with him and assisted him in caring for his elderly and ill mother. Additionally, the defendant had a history of substance abuse. The defendant also had a significant criminal history, having been previously convicted of eight felonies, including one fox; second degree battery, and had been arrested 46 times. None of the mitigating factors presented in La. C. Cr. P. art. 894.1 applied. Finding that there was an undue risk that the defendant would commit another crime if given a probated sentence and that a lesser sentence would deprecate the seriousness of his crime, the trial court sentenced the defendant to 36 years at hard labor without the benefit of probation or suspension of sentence.
The defendant filed a pro se motion for reconsideration of his sentence, but failed to provide any reasons for reconsideration of his sentence.. The motion was denied.
The defendant filed a second pro se motion for reconsideration of his sentence, again failing to provide any reasons for his request. This motion was also denied.
The defendant now . appeals, arguing that there was insufficient evidence to Convict him and that his sentence is excessive.
*1143 DISCUSSION
By his first assignment, the defendant alleges that- evidence was insufficient to uphold the conviction because the state failed to establish how much money was in the money bag that he took from the Family Dollar store. He shows that Fatheree was inconsistent with her story regarding how much money was missing from the safe. She first told police that $788 or $888 was missing. However, at trial, she stated that $715 was missing. |flOn the other hand, the defendant maintained that the bag he took from the safe only contained $240.
The state counters that Fatheree testified at trial that there was initially $900 in the safe when she opened the store and that after counting what was left, she was able to conclude that $715 was taken. The state contends that the trial court correctly dismissed the defendant’s self-serving testimony that he only stole $240.
The standard of appellate review for a sufficiency of the evidence claim is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992); see also La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A reviewing court may not impinge on the fact, finder’s discretion unless it is necessary to guarantee the fundamental due process of law. Id. The appellate court does not assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a trier of fact’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
In 2013, when the defendant committed the theft from the Family Dollar store, La. R.S. 14:67 provided, in pertinent part: ■
A.' Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent cohduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
[[Image here]]
When the misappropriation or taking amounts to a value of five hundred dollars or more, but less than a value of one thousand five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than five years, or may be fined not more than two thousand dollars, or both.
In State v. Johnson, 31,448 (La.App. 2 Cir. 3/31/99), 747 So.2d 61, 65, writ denied, 749 So.2d 653 (La.1999), we noted that the crime of felony' theft required proof that the defendant took another’s property valued at $500 or more. The defendant argued that the state failed to prove that the items taken by him .were valued at over $500. Rejecting his argument, we observed that “[ujnless it is shown that the'owner lacks knowledge of -the value of a movable, his or her *1144 testimony as to value is generally admissible, with its weight being- left to the jury.” Id., citing State v. Dilworth, 358 So.2d 1254 (La.1978); State v. Curtis, 319 So.2d 434 (La.1975).
We conclude that the evidence adduced at trial was sufficient to prove that the defendant committed theft of money in the amount of $500 or more, but less than $1,500. The store surveillance videotapes show the defendant taking something out of the Family Dollar store safe. The defendant |sadmitted at trial that he took a money bag out of the safe. Fatheree, the store manager, testified at trial that $715 was taken from the safe. She explained that although she initially reported a slightly higher amount to police, she later recounted the money remaining in the safe and was able to conclude that $715 was stolen. Additionally, Fatheree testified that the store was short by $715 when the store closed that evening. Most importantly, the fact finder , found that Father-ee’s testimony was more credible.
Accordingly, this assignment is without merit.
By his second assignment, the defendant alleges that the trial court erred in imposing an excessive sentence.
At the time the defendant committed this offense, the punishment for this middle-grade theft was up to five years at hard labor. As a fourth-felony habitual offender, the defendant faced a minimum sentence of 20 years and a maximum sentence of life imprisonment. The defendant argues, however, that his 36-year sentence is excessive because as it amounts to a life sentence for him, a 51-year-old man. Although he has been convicted of several felonies, he has never spent an extensive period of time incarcerated, and has five children and several grandchildren for whom he is responsible, as well as an elderly and ill mother. He also points out that the crime did not involve violence. Finally, Thompson notes that 10 months after he committed the offense, the Louisiana Legislature amended La. R.S. 14:67 such that the offense he committed would now be considered a misdemeanor offense.
The state opposes any reduction in sentence. It argues that the trial court carefully considered the sentencing factors provided in La. C. Cr. P. |9art. 894.1, including the defendant’s personal and criminal history.
The test imposed by the reviewing court in determining the excessiveness óf a sentence is two-pronged. First, the record must show that the trial' court took cognizance of the criteria set forth in La. C. Cr. P. árt. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Watson, 46,572 (La.App. 2 Cir. 9/21/11), 73 So.3d 471. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App. 2 Cir. 8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App. 2 Cir. 8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 *1145 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 03-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App. 2 Cir. 11/2/11), 78 So.3d 799.
The second portion of the sentence requires that a determination be made regarding the constitutional exces-siveness of a sentence. A sentence violates La. Const, art. I, § 20, if it is grossly out of proportion to the j mseriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment, are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Washington, 46,568 (La.App. 2 Cir. 9/21/11), 73 So.3d 440, writ denied, 11-2305 (La.4/27/12), 86 So.3d 625. As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Williams, 48,525 (La.App. 2 Cir. 11/20/13), 128 So.3d 1250.
The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App. 2 Cir. 12/14/11), 81 So.3d 228. On review, an appellate- court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App. 2 Cir. 1/25/12), 86 So.3d 29.
The habitual offender law has been found constitutional in its entirety, and the minimum sentences’ it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Thomas, 41,734 (La.App. 2 Cir. 1/24/07), 948 So.2d 1151, writ denied, 2007-0401 (La.10/12/07), 965 So.2d 396. The burden is on the defendant to rebut the presumption that a mandatory minimum | ¶ ¶ sentence is constitutional. To do so, the defendant must clearly and convincingly show that he is exceptional, in other words, that because of unusual circumstances the defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, supra at 676; State v. Henry, 42,416 (La.App. 2 Cir. 9/19/07), 966 So.2d 692. Critically, the district court may not rely solely on the nonviolent nature of the instant or past crimes as evidence to justify rebutting the-presumption of constitutionality. The lack of violence cannot be the only reason, or even the major reason, for declaring such a sentence excessive. State v. Johnson, supra at 676; State v. Henry, supra.
At the time the defendant committed the theft, La. R.S. 14:67 provided a sentence of up to five years for theft where the amount taken was valued at $500 or more, but less than $1,500.
In 2014, the legislature amended La. R.S. 14:67 to increase the value of goods taken in order to prove each grade of theft. Specifically, La. R.S. 14:67 now provides that “[w]hen the misappropriation or taking amounts less than a value of seven hundred fifty dollars, the offender shall be imprisoned for not more than six months, or may be fined not more than one thousand dollars, or both.” Accordingly, under *1146 the amended version of La. R.S. 14:67, the defendant’s crime would be considered a misdemeanor offense.
In State v. Sugasti, 2001-3407 (La.6/21/02), 820 So.2d 518, 520-21, the Louisiana Supreme Court stated:
This court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Wright, 384 So.2d 399, 401 (La.1980). A defendant must be sentenced according to sentencing provisions in effect at the time of the commission of the'offense. State v. Narcisse, 426 So.2d 118, 130-131 (La.1983)." “The mere fact that a statute may be subsequently amended, after the commission of the crime, so as to modify or lessen the possible 'penalty to be imposed, does not extinguish liability for the offense committed under the former statute.” Id.
In State v. Clark, 391 So.2d 1174 (La.1980), this court concluded that an ameliorative change in the penalty provision of a statute which occurs after the commission of the offense is a factor , to be weighed by the trial judge in imposing sentence. However, the court noted that “it is the rule in this state that the penalty provision in effect at the time of the offense is the applicable provision.” Id. at 1176. Although the trial judge should consider the ameliorative changes ih the law in imposing sentence, the trial judge should not derogate from the penalty provision in effect at the time of the commission of the offense.
The supreme court 'has also specifically held that “for multiple offender purposes, an offense which is subsequently reduced to a misdemeanor retains its felony status as of the time of commission.” State v. Blackwell, 377 So.2d 110, 112 (La.1979). In this case, the mandated sentence under La. R.S. 15:529.1(A)(4)(a) for a fourth-felony habitual offender is as follows:
* * .*
(4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(a) The person shall be.sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life ...
| üjAt the time the. defendant committed the theft from the Family Dollar store, La. R.S; 14:67 defined his conduct as felony theft. Therefore, pursuant to State v. Blackwell, supra, the trial court correctly utilized his most recent conviction to determine that the defendant was a fourth-felony habitual offender.
Nor is the defendant’s sentence excessive. The trial court considered the defendant’s PSI, letters submitted on his behalf, and the sentencing factors in La. C. Cr. P. art. 894.1. It explained that while the defendant appeared to have a substance abuse problem and is responsible for the care of several family members, he also has a significant criminal history including eight felony convictions (one for second degree battery) and 46 arrests. Accordingly, the trial court determined that he would likely commit another crime if given a probated sentence, and a lesser sentence would deprecate the seriousness of his crime. While the defendant’s sentence amounts to a life sentence for him due to his age, the trial court was required to impose a sentence of at least 20 years, and up to a mandatory life sentence. Given the defendant’s extensive criminal history, the defendant has not shown that he *1147 “is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.”
Accordingly, this assignment is without merit.
CONCLUSION
For the reasons stated above, the defendant’s assignments of error are without merit. We therefore affirm the defendant’s conviction and sentence. ,
CONVICTION AND SENTENCE AFFIRMED.