Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,286-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JAIDEN KEPHART                              Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 361,536

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Sherry Watters
    Bruce Gerard Whitaker

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

TOMMY JAN JOHNSON
JASON WAYNE WALTMAN
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and ROBINSON, JJ.

STEPHENS, J. dissents with written reasons.

**ROBINSON, J.**

Jaiden Kephart ("Kephart") entered a guilty plea for the charges of negligent vehicular injuring and vehicular homicide. A presentence investigation was ordered. He was sentenced to the maximum sentence of 5 years for negligent vehicular injuring, and to 25 years at hard labor, with the first 3 years to be served without benefit of parole, probation, or suspension of sentence, for vehicular homicide. The sentences were ordered to run concurrently. Kephart's motion to reconsider was denied without a hearing, and he timely filed a motion for appeal.

For the following reasons, we AFFIRM IN PART, REVERSE IN PART, AND REMAND WITH INSTRUCTIONS.

## FACTS AND PROCEDURAL HISTORY

On September 13, 2018, at approximately 11:15 a.m., Kephart, 19 years old, was driving a 2012 Toyota Camry with two passengers, Desiree White ("White") and Jared McCurdy ("McCurdy"). White, 19 years old, was his girlfriend and McCurdy, 23 years old, was his friend with whom he had stayed the night before. Kephart was driving McCurdy to his job at Pizza Hut located off Bert Kouns Industrial Loop in Shreveport, Louisiana. Kephart, as he was making a left turn into Pizza Hut, turned into the path of a Ford F550 tow truck and was struck on the passenger side. The tow truck was being driven at 47 mph. The driver of the truck stated that he could not avoid impact. The Camry and truck went into a ditch that was being mowed and the car struck a zero-turn lawn tractor. The Camry sustained heavy damage to the passenger side. White was the front seat passenger, and McCurdy was the rear seat passenger. Both White and McCurdy had to be extracted from the vehicle.

White was transported by ambulance to the hospital, where she was pronounced dead due to blunt force trauma sustained in the accident. McCurdy was also transported by ambulance to the hospital, where he remained for 12 days until discharged to a rehabilitation facility. His injuries included: fracture of the head and neck, fracture of the right femur, multiple fractures of the pelvis, major laceration of the spleen, fracture of the left acetabulum (socket portion of the ball and socket of the hip joint), laceration of the right kidney, contusion of the lung, coma testing for abnormal motor and verbal responses, and an inoperable L-5 inferior endplate fracture. Surgery was required for the repair to his pelvic area, femur, and hip socket, and his spleen was removed. He received blood transfusions and endured severe and constant pain in his pelvic region.

Kephart, White, and McCurdy had all "partied" together the night before. Toxicology reports on all three occupants showed the use of controlled substances, but no alcohol. Kephart allegedly smelled of marijuana at the scene. The physician reviewing Kephart's blood sample results opined that, although the benzodiazepine level was in therapeutic range, when combined with a THC level of 5.1ng/mL, he believed it would affect driving ability. He further noted that many states (not Louisiana) have a driving limit for THC of 5.0ng/mL or below. However, there was no video of the accident, nor any evidence to indicate Kephart was speeding or driving erratically. The removal of the Camry's occupants by the fire department prevented a determination of whether anyone was wearing seatbelts.

Kephart was charged by bill of information with first degree negligent vehicular injuring of McCurdy and vehicular homicide of White. He entered

a plea of not guilty. After the bill of information was amended for the second time, Kephart changed his plea to guilty on July 11, 2022. A presentence investigation was ordered by the court. A sentencing hearing was held on September 28, 2022, where the court took into account the presentence investigation report and other evidence presented by the State and the defendant. After the hearing, Kephart was sentenced to 5 years for first degree negligent vehicular injuring, and to 25 years at hard labor for vehicular homicide, with the first 3 years to be served without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently and with credit for time served. Kephart's motion to reconsider the sentences was denied without a hearing and he timely filed a motion for appeal.

## DISCUSSION

Kephart claims that the maximum and near maximum sentences for the charges of negligent vehicular injuring and vehicular homicide, respectively, are constitutionally excessive for a young, first-time offender under the circumstances of the offense. He urges that the trial court failed to consider many mitigating factors and misapplied the aggravating factors.

There is a two-prong test to be used by appellate courts when reviewing a sentence for excessiveness: (1) the trial record must demonstrate that the trial court complied with the guidelines in La. C. Cr. P. art. 894.1 (list of sentencing factors); and (2) the appellate court must determine if the sentence is constitutionally excessive. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116; *State v. Holloway*, 54,523 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1090, *writ denied*, 22-01090 (La. 9/20/22), 346 So. 3d 802; *State v. O'Neal*, 54,581 (La. App. 2 Cir. 6/29/22), 342 So. 3d 433; *State*

3

*v. Ladd*, 15-0772 (La. App. 4 Cir. 4/13/16) 192 So. 3d 235, *writ denied*, 16-0915 (La. 5/1/17) 220 So. 3d 742.

Articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307; *State v. Duncan*, 53,194 (La. App. 2 Cir. 1/15/20), 290 So. 3d 251; *State v. Kelly*, 52,731 (La. App. 2 Cir. 6/26/19), 277 So. 3d 855, *writ denied*, 19-01845 (La. 6/3/20), 296 So. 3d 1071. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *Bell*, *supra*. Important elements to be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *Bell*, *supra*; *State v. Thompson*, 50,392 (La. App. 2 Cir. 2/24/16), 189 So. 3d 1139, *writ denied*, 16-0535 (La. 3/31/17), 217 So. 3d 358; *State v. Bradford*, 29,519 (La. App. 2 Cir. 4/2/97), 691 So. 2d 864; *State v. Hudgins*, 519 So. 2d 400 (La. App. 2 Cir. 1988), *writ denied*, 521 So. 2d 1143 (La. 1988); *DeBerry*, *supra*. There is no requirement that specific matters be given particular weight at sentencing. *DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App.

2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence is excessive and violates La. Const. art. I, Sec. 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Bonanno*, 384 So. 2d 355 (La. 1980); *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *Bell*, *supra*; *Trotter*, *supra*; *State v. Lobato*, 603 So. 2d 739 (La. 1992); *State v. Davis*, 449 So. 2d 452 (La. 2003); *State v. Johnson*, 709 So. 2d 672 (La. 1998); *State v. Johnson*, 406 So. 2d 569 (La. 1981); *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Modisette*, 50,846 (La. App. 2 Cir. 9/28/16), 207 So. 3d 1108; *DeBerry*, *supra*.

On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *Bell*, *supra*; *Trotter*, *supra*; *Holloway*, *supra*; *O'Neal*, *supra*; *State v. Jones*, 99-2207 (La. 1/29/01), 778 So. 2d 1131; *State v. Soraparu*, 97-1027 (La. 10/13/97), 703 So. 2d 608. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. *Bell*, *supra*; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences

5

should not be set aside as excessive in the absence of a manifest abuse of that discretion.  *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *Allen*, *supra*.

La. C. Cr. P. art. 894.1B lists 33 factors to be considered in sentencing – the first 21 as aggravating factors and the remaining 12 as mitigating circumstances to support lesser sentences.  Kephart claims that the trial court did not consider any of the aggravating circumstances as support for the maximum and near maximum sentences and that none apply.  He also asserts that there are several mitigating factors that would apply to his sentence, but they were not considered.

Kephart further argues that the trial court mistakenly applied La. C. Cr. P. Art. 894.1A, which provides, which provides as follows:

> When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if any of the following occurs:
> (1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.
> (2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.
> (3) A lesser sentence would deprecate the seriousness of the defendant's crime.

He asserts that these factors determine incarceration, not the term of the sentence, and that they should not be considered as aggravating factors.

Kephart urges that sentences that are "at or near the maximum should ordinarily apply only to the most blameworthy offenders committing the most serious violations of the described offense." *State v. LeBlanc*, 09-1355, (La. 7/6/10), 41 So. 3d 1168; *State v. Fruge*, 14-1172 (La. 10/14/15), 179 So. 3d 579; *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665;

*Holloway*, *supra*; *State v. Sandifer*, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270.

Kephart compares the facts and circumstances of his case and the resulting sentence to an extensive list of cases in support of his argument that he should not receive a near-maximum sentence as a young, first-time offender. In particular, Kephart references *State v. Morain*, 08-1546 (La. App. 3 Cir. 6/3/09), 11 So. 3d 733, *writ denied*, 09-1670 (La. 4/30/10), 34 So. 3d 282, in which the original 25-year maximum sentence for vehicular homicide was found excessive; and after remand, a sentence was imposed of 15 years at hard labor, 8 years without benefits, and a $2,000 fine. Morain was a single father of two daughters, had served in the armed forces, was employed as a police officer, and suffered from PTSD, depression, and drinking problems. He was driving with a BAC of 0.10g%, swerved off the road, and struck a 17-year-old and his stepfather while they were changing a flat tire, killing the minor and injuring the stepfather. The court found that Morain was not the worst type of offender for whom the maximum sentences are reserved because his BAC was just slightly over the legal limit, he accepted responsibility and showed remorse for the consequences of his actions, and he had no prior DWI convictions or criminal record.

However, the State urges that the record supports that Kephart was not simply an innocent, youthful, first-time offender. It points out the police reports in which officers stated that Kephart showed signs of impairment at the scene, such as red, glassy eyes and slurred, incoherent speech. Kephart's lab reports showed he was positive for Benzodiazepine (Alprazolam), Cannabinoids (THC), and Cocaine/Metabolites (Benzoylecgonine). The reviewing physician opined that although the Benzodiazepine level was at a

therapeutic range, it would affect driving ability since it was combined with a THC level of 5.1%. In addition, the PSI contained Kephart's recorded adult criminal history involving speeding in an automobile and illegal possession of alcoholic beverages. As for Kephart's social history regarding family, education, and employment history, he dropped out of Captain Shreve High School in 11th grade and obtained a GED through the Youth Challenge Program at Camp Minden, a program often recommended through juvenile courts. He only held short-term jobs in the lawn service and food service industries. Numerous letters from individuals regarding Kephart's character described him as a person known for drug use and partying. One letter in particular indicated that Kephart posted on social media the same day of the accident that the night before White's death, he "took 8 [Xanax] bars and wreck [*sic*] my girl." The letter also stated that Kephart was partying with another girl while high on drugs shortly after the accident and that he failed to attend White's funeral. Another letter stated that Kephart was seen the morning of the accident under the influence to the point he was stumbling and could not walk, and was told he should not drive.

The trial court specifically stated during the sentencing hearing that it "considered all of the factors enumerated in Article 894.1B both mitigating and aggravating." The court further provided that the following aggravating factors enumerated in La. C. Cr. P. art. 894.1B(5) and B(9) applied in this case:

> B(5): The offender knowingly created a risk of death or great bodily harm to more than one person; and
> B(9): The offense resulted in a significant permanent injury or significant economic loss to the victim or his family.

8

It also stated that it "found none of the mitigating circumstances to apply." The trial judge provided a very brief recitation of the facts of the case, noting in particular that the evidence showed that Kephart partied into the early hours of the morning of the accident. The court also noted that it reviewed the presentence investigation and referenced receipt of numerous letters and emails as to Kephart's character. The court did not fail to consider the mitigating factors enumerated in La. C. Cr. P. art. 894.1B, but simply found that they were inapplicable to the case. Although there may have been other aggravating and mitigating factors statutorily or jurisprudentially, the court opted not to discuss or otherwise rely on them.

Per La. R.S. 14:39.2D, the sentencing range for first degree vehicular negligent injuring is a fine of not more than $2,000 or imprisonment with or without hard labor for not more than 5 years, or both. The trial court imposed a sentence of 5 years at hard labor. Per La. R.S. 14:32.1, the sentencing range for vehicular homicide is a fine of not less than $2,000 nor more than $15,000 and imprisonment with or without hard labor for not less than 5 years nor more than 30 years, with at least 3 years of the sentence to be imposed without benefit of probation, parole, or suspension of sentence. The trial court imposed a sentence of 25 years at hard labor, 3 years to be served without benefit of parole, probation, or suspension of sentence. The sentences for both first degree vehicular negligent injuring and vehicular homicide are to run concurrently, with credit for time served. The court waived the fines and costs for both charges.

Kephart's sentence is within the statutory range, less than the maximum allowed sentence, and well-supported by the record. Although the trial court did not provide extensive detail in its reasons for sentencing,

9

the court did, nonetheless, provide a factual basis, and the record supports the sentence. This Court finds that Kephart's sentence is not constitutionally excessive and the trial court did not abuse its discretion. The sentences are supported by the record, they were just, do not shock the sense of justice, and are not a needless and purposeless infliction of pain upon Kephart.

Although this Court upholds Kephart's *imprisonment* sentences for both charges, we find upon error patent review that the trial court imposed an illegal sentence when waiving the fine for the vehicular homicide charge. La. R.S. 14.32.1 dictates that there *shall* be a fine of not less than $2,000 nor more than $15,000 for the charge of vehicular homicide; therefore, the trial court is required to impose a fine within the specified range.

## CONCLUSION

For the foregoing reasons, we AFFIRM Kephart's sentences of 5 years at hard labor for first degree vehicular negligent injuring; and 25 years at hard labor for vehicular homicide, with 3 years to be served without benefit of parole, probation, or suspension of sentence; to run concurrently, with credit for time served; and the waiver of fines and costs *only* for the charge of first degree vehicular negligent injuring. We REVERSE AND REMAND in order for the trial court to impose the mandatory fine for the charge of vehicular homicide pursuant to La. R.S. 14:32.1.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.**

10

**STEPHENS, J., dissenting.**

I must respectfully dissent from the majority opinion in the above styled matter. Maximum and/or near maximum sentences are reserved for the worst offenders. Neither the defendant herein nor the facts of this case constitute the worst offender or the worst offense. Here, the defendant improvidently made a left turn into the path of an oncoming tow truck. It would be disingenuous to imply that his behavior was comparable to, for example, someone speeding through the streets of the city ignoring stop lights or signs, or driving down I-20 the wrong way.

The imposition of this near maximum sentence appears to rest upon the insensitive behavior of the defendant in the days and weeks following the accident. The defendant's juvenile behavior in the days following the accident was obviously the focus of the letters presented to the trial court. Frankly, being a teenage jerk is not grounds for the imposition of a near maximum sentence. I would reverse and remand with instructions.