Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 992,
La. C. Cr. P.

No. 52,663-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                      Appellee

versus

RODRIQUS HARRIS                         Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 342918

Honorable Katherine Clark Dorroh, Judge

* * * * *

ELLIS & ELLIS LAW FIRM                   Counsel for Appellant
By:  Carey J. Ellis, III


JAMES E. STEWART, SR.                    Counsel for Appellee
District Attorney


RICHARD SOL FEINBERG
TRENEISHA JACKSON HILL
JASON WAYNE WALTMAN
Assistant District Attorneys

* * * * *


Before STONE, STEPHENS, and McCALLUM, JJ.

**STONE, J.**

In this criminal case, the defendant, Rodriqus Harris ("Harris"), was found guilty by a jury of second degree rape and molestation of a juvenile. He was sentenced to 45 years at hard labor for second degree rape as a second-felony habitual offender, and to 15 years at hard labor for molestation of a juvenile, to be served consecutively. The sentencing judge ordered that all 45 years of the rape sentence be served without eligibility of parole. Harris now appeals. For the following reasons, we affirm the defendant's convictions, and we hold that his sentences are not excessive. However, we vacate Harris' habitual offender sentence and remand with instructions provided hereinafter.

## FACTS

Harris was charged by amended bill of information with second degree rape, La. R.S. 14:42.1, and molestation of a juvenile, La. R.S. 14:81.2. The crimes occurred between July 4, 2016, and July 16, 2016. At that time, the victim, T.B., was 13 years old and was Harris' stepdaughter.

The jury trial commenced on November 7, 2017. At trial, T.B. testified that Harris made her perform oral sex on him three times when they were in a car together. He grabbed her neck and pushed her head down. T.B. stated that Harris would tell her to "just f'ing drink it" and say "suck it, lick it, and stuff like that." Harris also told T.B. that if she told anyone, they would both get in trouble.

The final incident occurred on July 16, 2016. On that date, T.B. was in the doorway of her bedroom when Harris told her to pull down her pants and face away from him. Harris stood in the bathroom across the hallway from T.B.'s bedroom wearing only boxers. T.B. complied, and Harris had

begun masturbating with a bar of soap in his hand when T.B.'s mother, L.B., entered the area and saw what Harris was doing.

L.B. testified that when she saw Harris in the bathroom masturbating while looking into T.B.'s room, she said "what the fuck you doing?" Harris told her "you're tripping." Harris then told T.B. to "tell her [L.B.] nothing." L.B. asked T.B. what Harris made her do, and T.B. said "showing my body." L.B. grabbed both of her daughters, ran out of the house, and called the police.[1]

T.B. was subsequently taken to the Gingerbread House for a recorded interview. The recording of the interview was played for the jury and, in addition to the above incidents, T.B. stated that Harris had come into her room every night since July 4, 2016, pulled her pants down, and rubbed her private parts. At trial, Harris testified and adamantly denied any wrongdoing.

Following trial, the jury unanimously found Harris guilty of second degree rape and molestation of a juvenile. The trial court denied Harris' post-trial motions.

On November 27, 2017, the trial court sentenced Harris to 30 years at hard labor, with the first 2 years to be served without benefits for the second degree rape conviction, and to 15 years at hard labor for the molestation of a juvenile conviction. The sentences were ordered to be served consecutively. That same date, the state filed a second-felony habitual offender bill of information seeking to enhance Harris' sentence for second degree rape,

---

[1] L.B. was seven months pregnant at the time of the incident and has since filed for divorce.

2

based on Harris' prior conviction for armed robbery with a firearm from May 10, 2005, for which he received a 15-year sentence.

On January 5, 2018, Harris filed a pro se motion for production of documents (a *"Simmons* motion"). Therein, he requested free copies of

> all documentation pertaining to the state and prosecuting him including, but not limited to: arrest warrants; complete court minutes; indictment/bill of information; preliminary hearings; PSI and commitment reports; audio tapes; complete open file discovery; sentencing minutes extract; any physical evidence; any DNA testing; and all statements made against the defendant.

Harris did not specifically request any guilty plea transcript, nor did he identify the 2005 predicate offense (armed robbery) by docket number or otherwise. He claimed the documents requested would be "crucial in the filing of post-conviction relief."

The trial court ruled on the *Simmons* motion on January 11, 2018, granting it in part, and denying it in part. The trial court granted the motion as to the documents to which indigent inmates are generally entitled to as a matter of right under *State ex rel. Simmons v. State*, 93-0175 (La. 12/16/94), 647 So. 2d 1094. Namely, those are: (1) the bill of information or grand jury indictment; (2) the court minutes; (3) the guilty plea transcript; (4) the commitment order or documents committing the defendant to custody; and (5) the transcript of any evidentiary hearing held on a post-conviction relief application. As to all other requested documents, the trial court denied the motion, noting that Harris failed to show a particularized need. Harris did not receive a guilty plea transcript for the current offenses because none exists – he did not plead guilty to the current offenses. Harris likewise did not receive a copy of his 2005 guilty plea to armed robbery.

3

On March 6, 2018, Harris filed a pro se motion to quash the habitual offender bill of information, on the basis that his guilty plea for the 2005 predicate offense was obtained in violation of the constitution. Specifically, he argued that he was not properly *Boykinized* at the time he pled guilty to the predicate offense.

The habitual offender hearing was held on April 5, 2018. Therein, the trial court heard evidence concerning Harris' convictions. However, at Harris' request, the trial court deferred ruling on his motion to quash until the trial court could obtain and review a copy of the *Boykin* transcript for the predicate offense.

The following evidence was presented at the habitual offender hearing. Shreveport Police Officer Danny Duddy was accepted as an expert in the field of latent fingerprint examination. He testified that he took Harris' fingerprints, S-1, and compared them with the fingerprints contained on S-2 (bill of information, fingerprints, and court minutes for the 2005 armed robbery conviction, Caddo Parish Docket No. 233,911), and the fingerprints on S-3 (fingerprint attachment sheet for the instant convictions). Officer Duddy concluded that Harris was the same individual whose prints appeared on all three documents

At a hearing on June 11, 2018, the trial court noted that it had received the transcript of the *Boykin* colloquy from Harris' prior conviction, and stated that it was going to file a copy in the instant case, Docket No. 342,918. The trial court extensively quoted and discussed, on the record, the colloquy between Harris and then-Judge Crichton, and found that Harris was represented by counsel, Anita McKeithen, and was properly advised of his rights. Thus, the trial court denied Harris' motion to quash the habitual

4

offender bill. Neither Harris nor his counsel objected to the trial court's ruling on the motion to quash. Likewise, Harris made no objection regarding his nonreceipt of a copy of the guilty plea colloquy transcript for the predicate offense.

On August 6, 2018, the trial court adjudicated Harris a second-felony habitual offender and resentenced him accordingly. Specifically, the trial court vacated the prior sentence imposed for second degree rape, and sentenced Harris to 45 years at hard labor without benefits. The trial court also stated that Harris' sentence for molestation of a juvenile would remain at 15 years, and that his sentences would be served consecutively.

Harris filed two motions to reconsider sentence, one pro se and one counseled, arguing that his total 60-year sentence was excessive. The trial court denied both motions. This appeal followed.

## DISCUSSION

**Validity of habitual offender adjudication; motion for production of documents**

**Motion for production of documents.** In his first assignment of error, Harris asserts that his adjudication as a second felony offender is invalid. Specifically, he asserts that: (1) pursuant to his *Simmons* motion, the trial court ordered that Harris be given a copy of the transcript of his 2005 guilty plea; and (2) because such was not done, the habitual offender adjudication predicated on that 2005 conviction is invalid. Harris appears to further argue that because he denied the allegations of the habitual offender bill, the State's burden of proof required the 2005 guilty plea transcript – demonstrating constitutional validity of the plea – to be entered into

5

evidence, and because such was not done, the evidence was insufficient to prove he is a second felony offender.

Under *State ex rel. Simmons v. State*, *supra*, indigent inmates are *generally* entitled to the following documents free of charge: (1) transcripts of their guilty plea colloquies; (2) copies of the bill of information or grand jury indictment charging them with a crime; (3) copies of the district court minutes for various portions of their trials; (4) copies of transcripts of evidentiary hearings held on their applications for post-conviction relief; and (5) copies of the documents committing them into custody. However, an inmate is not automatically entitled to those documents free of charge if the only claims that the documents could support are not cognizable on collateral review or are time-barred pursuant to La. C.Cr.P. art. 930.8. *State ex rel. Brown v. State*, 2003-2568 (La. 3/26/04), 870 So.2d 976 *citing State ex rel. Degreat v. State,* 98-0690 (La. 7/2/98), 724 So.2d 205 and *State ex rel. Fleury v. State*, 93-2898 (La. 10/13/95), 661 So.2d 488.

If, under the foregoing jurisprudence, an indigent inmate is not automatically entitled to a free copy of a certain document, then he or she must establish particularized need for the document to obtain a free copy thereof. To establish particularized need, the inmate must: (1) articulate a valid attack on an existing conviction of the inmate through a procedurally valid pleading or motion; and (2) that attack must require the requested document as supporting evidence. Otherwise, the inmate must pay for the requested document. S*tate ex rel. Bernard v. Criminal District Court Section J.*, 94-2247 (La. 4/28/95), 653 So. 2d 1174.

**Habitual offender law**. The state bears the burden of proof beyond a reasonable doubt in habitual offender proceedings. La. R.S.

15:529.1(D)(1)(b); *State v. Collins*, 48,782 (La. App. 2 Cir. 2/26/14), 136 So. 3d 912, *writ denied*, 14-0645 (La. 10/31/14), 152 So. 3d 150. At a minimum, that burden requires the state to prove that there is a prior felony conviction and that the defendant is the person who was convicted of that prior felony.

In *State v. Shelton*, 621 So. 2d 769 (La. 1993), the Louisiana Supreme Court outlined how the burden of proof potentially shifts back and forth in habitual offender proceedings where the predicate conviction was established via guilty plea:

> If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three *Boykin* rights.

*Id*. at 779-780. Shifting the burden to the defendant to produce evidence of invalidity of the guilty plea is justified by the "presumption of regularity that attaches to final judgments." *State v. Shelton*, *supra*; *State v. Fields*, 42,761 (La. App. 2 Cir. 1/9/08), 973 So. 2d 973, *writ denied*, 08-0469 (La. 9/26/08), 992 So. 2d 983.

7

The Habitual Offender Act does not require the state to use a specific type of evidence to carry its burden at a habitual offender hearing. Prior convictions may be proved by any competent evidence. *State v. White*, 13-1525 (La. 11/8/13), 130 So. 3d 298. *See also State v. Roland*, 49,660 (La. App. 2 Cir. 2/27/15), 162 So. 3d 558, *writ denied*, 15-0596 (La. 2/19/16), 186 So. 3d 1174 (stating that minutes reflecting that the *Boykin* requirements were satisfied are sufficient).

The defendant's burden under *Shelton*, *supra,* may be satisfied using a transcript, testimony regarding the taking of the plea, or other affirmative evidence. *State v. Clesi*, 07-0564 (La. 11/2/07), 967 So. 2d 488 (finding that the defendant's pre-hearing and mid-hearing objections that he was not properly *Boykinized* for the predicate guilty pleas did not constitute affirmative evidence of a defect in in his prior guilty pleas). *See also State v. Henry*, 42,416 (La. App. 2 Cir. 9/19/07), 966 So. 2d 692, *writ denied*, 07-2227 (La. 8/29/08), 989 So. 2d 95 (stating that the absence of a *Boykin* transcript does not constitute affirmative evidence of an infringement of the defendant's rights or a procedural irregularity).

La. C.Cr.P. art. 841(A), known as the "contemporaneous objection rule," provides:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence… It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

**Analysis.** We construe the trial court's written ruling on Harris' motion for production as not granting Harris a free copy of his 2005 guilty

8

plea transcript. Nowhere in Harris' *Simmons* motion did he specifically request his guilty plea transcript, nor did he state the docket number or any other identifying information for the 2005 predicate offense. The only language in Harris' motion perhaps even arguably requesting the 2005 guilty plea transcript is his request for free copies of "all documentation pertaining to the state and prosecuting him." Furthermore, Harris did not file his pro se motion to quash the habitual offender bill predicated on the 2005 conviction until approximately two months *after* he filed his *Simmons* motion. Accordingly, we find that Harris failed to adequately apprise the trial court of his (alleged) desire to obtain the 2005 guilty plea transcript.[2]

In response to Harris' *Simmons* motion, the trial court granted Harris' motion as to the documents listed in *Simmons, supra.* That list includes guilty plea transcripts. However, like Harris' motion, the trial court's ruling did not contain the docket number – or any other identifying information – for Harris' predicate offense. The absence from the trial court's ruling of a docket number (or any other identify) for the predicate offense, we do not believe that the trial court intended to grant Harris a free copy of his 2005 guilty plea transcript. Instead, we construe the trial court's ruling as a pro forma directive to the clerk of court to provide Harris with the *Simmons* documents regarding the *current* offenses; because Harris did not plead

---

[2] We doubt that Harris actually had a specific desire to obtain the 2005 guilty plea transcript at the time he filed the motion. Indeed, after the request for "all documentation pertaining to the state and prosecuting him," he made an extensive list of nonexclusive particulars which did not include the 2005 guilty plea transcript. Likewise, his motion did not contain any reference to the 2005 predicate offense by Docket number or otherwise. In light of those omissions and Harris' failure to raise the issue of his nonreceipt of the transcript at the final hearing on the habitual offender adjudication, it is likely that this argument is a mere afterthought.

guilty to the current offenses, that portion of *Simmons* was inapplicable (even though it was quoted in the trial court's ruling).

Regardless, Harris waived any argument he may have had as a result his nonreceipt of the 2005 guilty plea transcript. The trial court indicated on the record at the June 11, 2018, hearing that it had obtained and reviewed a copy of the 2005 guilty plea transcript, and based thereon, ruled that Harris was properly advised of his rights in connection with that guilty plea. Neither Harris nor defense counsel indicated that they had not been given an adequate opportunity to review that guilty plea transcript. Nor did Harris or his attorney object to the trial court's ruling that Harris was properly advised of his rights.  This inaction by Harris and his attorney bars him from raising his nonreceipt of a copy of the 2005 guilty plea transcript on appeal. La. C.Cr.P. art. 841(A).

Harris' argument that the evidence was insufficient to prove his status as a habitual offender is, likewise, without merit.  As previously stated, because Harris denied the allegations of the habitual offender bill, the state had the burden of proving the existence of the prior guilty plea and that Harris was represented by counsel when it was taken. *State v. Shelton*, *supra*.

The state satisfied that burden. Specifically, at the habitual offender hearing, the state introduced certified copies of the bill of information, court minutes, and the fingerprint attachment sheet for Harris' prior conviction, as well as the testimony of an expert witness who identified the fingerprints on those documents as belonging to Harris.  The exhibits show that Harris pled guilty to armed robbery with a firearm on May 10, 2005, in Caddo Parish. The minute entry states:

> The accused, present with counsel, Anita McKeithen, withdrew his former plea of not guilty and pled guilty to the charge. The court informed the defendant of his constitutional rights as per *Boykin v. Alabama* (see court reporter's transcript). Case was continued until May 31, 2005 at 1:30 o'clock p.m. for sentencing hearing.

This evidence, which established the existence of Harris' prior guilty plea and his representation by counsel, satisfied the state's initial burden of proof.

Pursuant to S*tate v. Shelton*, *supra*, the burden of proof then shifted to Harris to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. He failed to do so. While his pro se motion to quash *alleged* that he was not fully advised of his rights at the time he pled guilty, Harris failed to provide any *evidence* supporting that allegation. Therefore, the burden of proving the constitutionality of the plea did not shift back to the state, and it was not obligated to introduce into evidence a perfect *Boykin* transcript for the predicate offense.

For purposes of appeal, Harris waived any argument he may have had regarding the trial court's ruling on his motion to quash or his nonreceipt of the 2005 guilty plea transcript. This assignment of error is without merit.

**Excessive sentence**

In his second assignment of error, Harris asserts that his 60-year total sentence is constitutionally excessive. Harris complains that the trial court did not consider any mitigating factors; however, Harris does not assert any specific facts as constituting mitigating factors that the court should have considered. Harris also complains that the trial court did not order a presentence investigation report.

11

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness: (1) whether the trial court properly took cognizance of the factors set forth in La. C.Cr.P. art. 894.1; and (2) whether the sentence is constitutionally excessive under La. Const. art. I § 20.

As previously stated, we must first determine whether the record shows that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance. Instead, it is sufficient if the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. Articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*.

The La. C.Cr.P. art. 894.1 factors to be considered include the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. There is no requirement that any specific factor be given any particular weight at sentencing. *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

Second, this court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. DeBerry*, *supra*.

A presentence investigation report is an aid to help the court, not a right of defendant, and the court is not required to order one. La. C. Cr. P. art. 875; *State v. Scott*, 50,920 (La. App. 2 Cir. 11/16/16), 209 So. 3d 248, 253, *writ denied*, 17-0353 (La. 11/13/17), 229 So. 3d 478.

When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. *State v. Allen*, 52,318 (La. App. 2 Cir. 11/14/18), 260 So. 3d 703. It is within the court's discretion to make sentences consecutive rather than concurrent. *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836.

When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. *State v. Williams*, 52,052 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1200. Among the

factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for the defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain. The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Weston*, 52,312 (La. App. 2 Cir. 11/14/18), 260 So. 3d 722, *writ denied*, 18-2066 (La. 4/22/19), 268 So. 3d 299.

La. R.S. 14:42.1(B) provides that a person convicted of second degree rape shall be imprisoned at hard labor for not less than 5 years nor more than 40 years, and required that at least two years of the sentence be served without benefit of probation, parole, or suspension of sentence.

In 2016, when Harris committed the second degree rape, La. R.S. 15:529.1(A)(1), the applicable Habitual Offender Law provision, stated: "If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction."[3] Therefore, the applicable sentencing range for Harris, a second-felony offender convicted of second degree rape, is 20 to 80 years at hard labor with at least the first 2 years to be served without the benefit of parole.

---

[3] This provision was subsequently amended.

14

La. R.S. 14:81.2(B)(2) provides that whoever commits the crime of molestation of a juvenile, when the victim is 13 years of age or older but has not yet attained the age of 17, and when the offender has control or supervision over the juvenile, shall be fined not more than $10,000, or imprisoned, with or without hard labor, for not less than 5 nor more than 20 years, or both.

The record adequately supports Harris' sentences. At the original sentencing hearing and the habitual offender sentencing hearing, the trial court reviewed the facts of this case and found the following aggravating factors applicable: (1) Harris' conduct during the commission of the offenses manifested cruelty to the young victim and took her innocence from her; (2) Harris knew or should have known that the victim was particularly vulnerable due to her young age; (3) Harris used his position or status to facilitate the commission of the crimes as he was the victim's stepfather and had supervision and control over her; (4) the offenses resulted in significant permanent emotional injury to the child victim and her mother, noting that the child had a difficult time testifying and obviously is very affected by the circumstances; and (5) Harris' history of criminal conduct. The trial court also provided written reasons, stating that in determining Harris' habitual offender sentence, it considered Harris' prior conviction for armed robbery, the age of the victim, Harris' former conviction of two sex crimes involving a juvenile, and that Harris has failed to show any remorse for his actions.

The trial court found that no mitigating factors are applicable in this case. Despite arguing that this somehow supports his assignment of error, Harris failed to ever allege any additional facts that he says the trial court should have considered in mitigation. Further, although the trial court did

15

not provide a thorough explanation of the factors it considered in ordering the sentences to run consecutively, the trial court did specifically note that it considered the nature of the crimes and the young age of the victim. The record adequately supports the sentences imposed.

Harris' total 60-year sentence is not constitutionally excessive. Harris abused his position of trust and authority to sexually abuse his 13-year-old stepdaughter, including forcing her to perform oral sex on him multiple times. Considering Harris' deplorable conduct, the sentences imposed by the trial court do not shock the sense of justice, nor are they grossly disproportionate to the severity of the offenses. This assignment of error is without merit.

**Error patent**

The record shows that the trial court incorrectly believed that the entire 45-year sentence was legally required to be imposed without parole eligibility. At the habitual offender sentencing hearing, the trial court first stated that it would order that only 15 years be served without parole eligibility, but after conferring with the assistant district attorney, the trial court stated that the entire sentence had to be imposed without parole eligibility, and therefore, imposed Harris' entire 45-year sentence without benefits.

La. R.S. 14:42.1(B), as written at the time of Harris' crimes, only requires that "at least two years" be imposed without the benefit of parole, and that the entire sentenced be imposed without benefit of probation or suspension of sentence. The Habitual Offender Law in effect at that time did not alter that restriction of parole (or other sentencing benefits). Although the trial court incorrectly believed that it did not have discretion in

16

determining the exact length of time that parole eligibility was to be withheld, the denial of parole eligibility for the entirety of Harris' sentence is not illegal or excessive. Nonetheless, this error of law caused the trial court to increase the parole eligibility restriction on Harris' second offender sentence for second degree rape from 15 years to 45 years.

## CONCLUSION

Harris' convictions are sentences affirmed. His adjudication as a second felony offender, and his 15 year sentence for molestation of a juvenile, are also affirmed. Harris' sentence to 45 years of imprisonment at hard labor is not excessive, but is vacated due to the legal error regarding the parole restriction. We remand with instructions to the trial court to reconsider the parole restriction on the second felony offender sentence for second degree rape in light of this opinion, and to resentence Harris accordingly.

**AFFIRMED IN PART; VACATED IN PART; REMANDED.**